THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* EDWARD C. SMALLWOOD, Defendant.

Court of Special Sessions, Town of Irondequoit, Monroe County, February 14, 1967.

*John C. Little, Jr., District Attorney* (*William G. Servis* of counsel), for plaintiff. *Edward C. Smallwood*, defendant in person.

J. WEBB L. SHEEHY, J. The defendant was arrested in the Town of Irondequoit, January 7, 1967, while operating a motorcycle and was charged with the violation of subdivision 6 of section 381 of the Vehicle and Traffic Law. The defendant, pursuant to the summons served upon him, appeared January 10, 1967, pleaded not guilty, deposited $5 bail and the case was adjourned to January 17, 1967 for trial. Upon the trial, it was testified by New York State Trooper R. A. Endres that the defendant was wearing a knitted-ski-type hat with no chin or neck strap and no reflectors. The defendant, who was not represented by attorney, testified that the People's evidence was substantially correct and that he was not wearing a hard hat, sometimes known as a protective helmet, but raised the question that the particular subdivision of this section of the Vehicle and Traffic Law was unconstitutional. This court adjourned the case to January 31, 1967 for decision, at which time it was again adjourned until February 14, 1967 for decision. Section 381 of the Vehicle and Traffic Law designated " Motorcycle Equipment ", reads in part as follows (subd. 6) : " It shall be unlawful, on and after January first, nineteen hundred sixty-seven, for any person to operate or ride upon a motorcycle unless he wears a protective helmet of a type approved by the commissioner. Such a helmet must be equipped with either a neck or chin strap and be reflectorized on both sides thereof. The commissioner is hereby authorized and empowered to adopt and amend regulations covering the types of helmets and the specifications therefor and to establish and maintain a list of approved helmets which meet the specifications as established hereunder ".

The purpose of this statute is stated by a committee appointed by the Commissioner of Motor Vehicles in 1965 to be the imposition of certain requirements for the equipment of motorcycles and the riders thereof and was drafted based on certain statistics elicited from the accident and registration records of motorcycles and their operators in an enlightened attempt, in the drafting of the statute, to minimize head injuries.

The Legislature in its wisdom made certain guidelines, namely, that the protective helmet must be equipped with either a neck or chin strap and be "reflectorized " on both sides. The Legislature, however, permitted the actual approved type and manufacturer to be determined as amended, at the will of the Commissioner of Motor Vehicles.

The charge here is not for a crime, but for a " traffic infraction "; however, the rules of criminal law are applicable to

such prosecutions (*People* v. *Hilldebrandt,* 308 N. Y. 397). Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid (*People* v. *Grogan,* 260 N. Y. 138.) A criminal statute must be sufficiently definite, " clear and positive ", to give " unequivocal warning to citizens of the rule which is to be obeyed." (*People* v. *Firth,* 3 N Y 2d 472, 474). Surely it is definite that such a " protective helmet " must be equipped with a neck or chin strap and further that it must be " reflectorized " on both sides. The motorist has no other warning of what he must wear, except that it must be " approved by the Commissioner of Motor Vehicles ". It, therefore, becomes incumbent upon the operator or rider, to obtain somewhere, a list of approved helmets, which must be kept current, because the list can be amended by the Commissioner, thereby making a helmet he has purchased from the approved list, an unapproved helmet at a later date. It is believed that it was not the intention of the drafter of this subdivision or the intention of the Legislature to induce such chaos. The operation of a motor vehicle (in this case a motorcycle) has been held to be a privilege which may be denied the motorist, and not a right, and in order to exercise the privilege the Legislature may require the operator to waive certain rights and privileges for the protection of other motorists, or riders, or other persons or vehicles, legally upon the highways. Certain constitutional rights and privileges may be waived in order to exercise a privilege granted by the Legislature, but others cannot (*Vose* v. *Cockcroft,* 44 N. Y. 415; *Mayor etc. of N. Y.* v. *Manhattan Ry. Co.,* 143 N. Y. 1; *Dodge* v. *Cornelius,* 168 N. Y. 242; *Musco* v. *United Surety Co.,* 196 N. Y. 459).

The right to wear certain clothing is such a privilege, assuming such clothing to be not indecent. An obvious extension of this enactment would be a requirement that all automobile operators, whether operating closed or open automobiles, wear some type of approved, as amended, protective helmet; or that all motorcycle operators wear approved, as amended, protective shin guards, knee or elbow pads; and at night, during the period from between one-half hour after sunset to one-half hour before sunrise, wear a " reflectorized " international orange-colored outer covering of a type and manufacture approved by the Commissioner of Motor Vehicles.

Subdivision 6 of section 381 of the Vehicle and Traffic Law is too indefinite for a criminal law. The statute does not require this stated safety device upon the vehicle itself for the purpose

1030

of protecting other users of the highways from injuries or damage; it simply removes from the individual the right to exercise his judgment, or preference, in the use of personal adornment, even though capricious.

Subdivision 6 of section 381 of the Vehicle and Traffic Law is unconstitutional; complaint dismissed.