Richard D. Yunker, J.
The defendant was charged with violation of subdivision 6 of section 381 of the Vehicle and Traffic Law in that he operated a motorcycle without a protective helmet on February 15, 1967 in the Town of Oakfield, G-enesee County, New York. The defendant appeared in court to answer the charge and raised the issue that the subdivision of the statute under which he was charged is unconstitutional.
Subdivision 6 of section 381 of the Vehicle and Traffic Law, designated ‘ ‘ Motorcycle equipment ’ ’ reads as follows: “It shall be unlawful, on and after January first, nineteen hundred sixty-seven, for any person to operate or ride upon a motorcycle unless he wears a protective helmet of a type approved by the commissioner. Such a helmet must be equipped with either a neck or chin strap and be reflectorized on both sides thereof. The commissioner is hereby authorized and empowered to adopt *585 and amend regulations covering the types of helmets and the specifications therefor and to establish and maintain a list of approved helmets which meet the specifications as established hereunder.”
It is apparent that the purpose of this statute is the protection of the person who is required to wear the helmet. The statute does require that the helmet be refleetorized and this could be considered a means to make the wearer more easily visible to other persons using the highway and thus a safety device for the benefit of all users of the highway. However, this statute requires such marking on a protective helmet and it requires the wearing of the protective helmet. A requirement that refleetorized markings be worn upon the head of the operator is quite different from the requirement that the operator wear a protective helmet with refleetorized markings. It is apparent that the design of the statute is to protect the person wearing the helmet by preventing head injuries among motorcyclists who are involved in accidents. That the protective helmet required by the statute is also required to be refleetorized is only incidental to the requirement that a protective helmet be worn; it is only a description of the type of protective helmet to be worn.
Many requirements concerning equipment for vehicles that are used upon the highway are imposed by law. For instance, it is common knowledge that vehicles operated in the hours of darkness are required, not only by common sense, but also by law to have suitable head lights and tail lights. However, the requirement of the statute now challenged is unique in that so far as use of highways is involved it affects only the safety of the person who is required to wear the protective helmet. It is obvious that the requirement for head lights and tail lights will make the highways safer for other users of the highway. However, it cannot be argued that the motorcyclist who does not wear a protective helmet has any different effect upon the safety of other users of the highway than a motorcyclist who does wear a helmet.
The question then is whether the State can by such a statute require a motorcyclist to wear a protective helmet for the purpose of protecting himself from injury. Two issues can be distinguished. One issue is whether this particular statute here challenged is definite enough to sustain a criminal conviction. The other issue is whether the government has power to require a motorcycle operator or any other person to wear a protective helmet to protect himself, even if by a statute sufficiently definite to sustain a criminal conviction. This other issue would be presented by any statute requiring all persons to wear protective *586 helmets and seatbelts while operating a motor vehicle or by any statute requiring all persons to refrain from smoking.
It has been questioned whether a Court of Special Sessions should presume to declare a statute invalid. It is contended that such a serious step should be taken only by an appellate court, and further that if it is taken by a Court of Special Sessions, there may arise a situation where the law will be interpreted differently in different townships in the same county. The contention that the defendant should be required to appeal to County Court to have this issue decided because the question is serious and because a County Court decision would make the same interpretation binding in all the townships of the county is plausible. The weight of these statements is appreciated. The reported cases show a split of authority as to whether or not an inferior tribunal should pass upon the validity of a statute. (8 N. Y. Jur., Constitutional Law, p. 569.) Yet, this court must decide the issue because the defendant is entitled to justice in this court. It would be unfair to refuse to consider any point that the defendant may raise in his defense and require him to approach another court. Why should the burden of appeal be put upon the defendant rather than upon the People? Why should the defendant be required to suffer a conviction in one court and then appeal to another court before he can have consideration for an argument that might avoid conviction? In the opinion of this court it is the duty of the trial court to consider all issues raised by the defendant.
The issue of whether the statute is definite enough to sustain a criminal conviction has been ruled upon by the Court of Special Sessions in the Town of Irondequoit, County of Monroe. The opinion delivered by Magistrate J. Webb L. Sheehy dated February 14, 1967, in the case of People v. Smallwood (52 Misc 2d 1027) held that the statute did not give the defendant sufficient notice of what he must wear. The statute informs the defendant the helmet must be approved by the Commissioner of Motor Vehicles but leaves to the defendant the burden to obtain somewhere the list of helmets approved by the Commissioner and from time to time obtain another list to determine whether or not a helmet once approved remains on the list as amended by the Commissioner. This was held by the court to be too indefinite for a criminal statute. There can be no question about the authority of the Legislature to delegate to the Commissioner of Motor Vehicles the power to make the technical decisions concerning specifications of the helmets. However, the practical difficulty faced by the citizen in obtaining the information necessary to comply with the statute should not be slighted. While *587 ignorance of the statute cannot be an excuse for not obeying the law, it must appear that the citizen may with reasonable effort be able to determine what the statute requires before he can be punished for failure to comply.
Subdivision 9 of section 381 of the Vehicle and Traffic Law provides that it shall be unlawful to sell or distribute protective helmets unless they are of a type and specification approved by the Commissioner of Motor Vehicles. This subdivision 9 reads as follows: “ It shall be unlawful, on and after January first, nineteen hundred sixty-seven, to sell, offer for sale or distribute any protective helmets, goggles or face shields for use by the operators of motorcycles, or protective helmets for the use of passengers thereon, unless they are of a type and specification approved by the commissioner and appear on the list of approved devices maintained by the commissioner ”. There is an important difference between the restriction imposed by subdivision 6 and that imposed by subdivision 9; subdivision 6 requires the operator to wear a protective helmet to protect his own head, while subdivision 9 regulates the sale of protective helmets to protect the head of another person. The conduct of the person selling what are purported to be protective helmets and the protective ability of the helmets sold clearly affect the safety of other citizens who may rely on such helmets for protection. It is not too much to require a person who sells protective helmets to inquire concerning the regulations and specifications established by the Commissioner and to comply with reasonable requirements of the Commissioner in making application for approval. The rules of the Commissioner are published in the Official Compilation of the Codes Rules and Regulations of the State of New York (15 NYCRR Part 54).
The imposition upon the person selling protective helmets of the burden to determine what the regulations are and to comply with them can be sustained because of the effect on other persons who will use the protective helmets. However, the conduct of this defendant has not such an effect on other persons as to sustain the imposition of that burden upon him. An appreciation of the burden placed on the motorcycle operator may be obtained by reflecting on the burden on the average motorist of a statute requiring all operators of motor vehicles to wear protective helmets or to wear seatbelts of a type approved by the Commissioner of Motor Vehicles on a list the Commissioner would make and amend from time to time. It may be noted that the rules of the Commissioner for obtaining approval of a helmet are apparently designed for use only by manufacturers and retailers of helmets. There is a provision that the applicant *588 may be required to submit a reasonable number of samples for testing, and the regulations provide procedures to be followed by manufacturers and retailers but none for individuals for .their sole use. Apparently the Commissioner does not contemplate any individual applying for approval of a helmet to be worn by himself alone.
It is the opinion of this court that subdivision 6 of section 381 of the Vehicle and Traffic Law, as applied to the operator of a motorcycle, is too indefinite to sustain a criminal conviction.
The second issue must now be considered, that is, whether the State has the authority even by a statute definite in its terms to require a motorcycle operator to wear a protective helmet.
Our government is a government of limited powers. Our Federal Government has all the .powers given to it in the Federal Constitution. All the other powers are reserved to the States and to the people. Our State government has all the power comm only referred to as police power, which can be defined as the power to make the necessary laws to maintain public order, public health, public safety, public morals and public welfare. There are many reported eases illustrating the extent of the police power. To the knowledge of this court there is no reported case which will fit closely the facts of the case at bar.
There are many definitions of the police power. All of the definitions, when properly understood, involve the principle of regulating the conduct of one person so that another person will not be unreasonably endangered or restricted in the use and enjoyment of public and private property; the regulation of the conduct of one person is justified because of the effect of that conduct on other persons. In the case of the vehicle and traffic laws, the police power authorizes statutes that tend to make the highways safer or more useful to the general public. It can be argued that the statute here questioned affects public welfare because if a person suffers injury that could have been avoided by wearing a protective helmet, that person will perhaps become a public charge because of a disabling injury and that those who have been dependent upon that person for support may also become a public charge. The possibility and even likelihood of this happening cannot be denied. If a statute required every person to refrain from smoking there could be no serious argument that many persons would be spared crippling illnesses that cause premature disability and death. If a statute required every person to retire to bed by 10 :00 p.m. every evening it would probably benefit the general health of many citizens. A court cannot say as a matter of law that there is no public benefit *589 from a statute requiring motorcyclists to wear a protective helmet, or a statute requiring all persons to refrain from smoking, or a statute requiring all persons to retire to bed by 10:00 p.m. every evening.
To state this argument and concede that it has weight does not decide this issue. If the fact that this argument has validity were taken to decide a question such as presented by this ease, then it would justify almost any rule imposed by the Legislature, for our society is so complex today that there are very few things that cannot be said to affect some other person or the public treasury. If this argument were to decide questions such as presented by this case, then the hypothetical statute requiring people to go to bed early would be valid. But such an argument does not decide the question but merely poses one factor to be considered with other factors.
The statute challenged in this case has the direct effect of protecting the physical well-being of the person who is subject to the mandate of the statute, and the indirect effect of protecting other persons from the burdens that might result from the death or disability of the person subject to the mandate; the direct effect is to safeguard the motorcyclist and the indirect effect the prevention of the motorcyclist and his dependents from becoming public charges.
As the police power is understood by this court it justifies the regulation of the conduct of one person because of the effect of that conduct upon other persons. Therefore the police power does not justify the statute on the basis of the direct effect alone. Is the indirect effect such that the police power authorizes the statute?
In the opinion of this court it is not. The police power traditionally has not included the power to make a citizen protect his own physical well-being. To hold that a citizen may be required to protect his health alone would be an enlargement of the police power beyond traditional limits; it would introduce a novel basis for government power, a new principle upon which to authorize the regulation of the lives of the citizen in a manner and to an extent hitherto unknown. As our society has grown more complex, governmental regulation has necessarily become more complex and complete. Yet for all the extent to which the conduct of citizens has been subject to regulation, there has been no regulation for the sole purpose of making the citizen protect his own physical well-being so that others may benefit from it. There are statutes that regulate a citizen in matters that affect his own health. For example, the citizen is restricted in the use of alcohol and narcotics. ' However it must *590 be noted such restriction is not the exercise of the police power to make a citizen maintain himself in a state of physical and mental well-being so that other persons may not be deprived of sharing in the fruits of his good health; it is the exercise of the police power to protect other persons from the harmful conduct of citizens whose behavior toward others is affected by the use of alcohol or narcotics.
It is the holding of this court that subdivision 6 of section 381 of the Vehicle and Traffic Law, which requires the operator of a motorcycle to wear a protective helmet, is unconstitutional as applied to this defendant because it is not sufficiently definite to sustain a criminal conviction, and because the police power does not authorize statutes requiring a citizen to protect his own physical well-being. The charge is dismissed.