Motorcycle — Crash Helmet — Requirement Title 47 O.S. 40-105 [47-40-105](G) (1968), has a relationship to the protection of the individual motorcyclist from himself but not to the public health safety and welfare. Therefore, Section 47 O.S. 40-105 [47-40-105](G), supra, requiring all operators and riders of motorcycles to wear a crash helmet while operating a motorcycle is unconstitutional since it has no relationship to the general public health, safety and welfare. The Attorney General has had under consideration your letter dated July 2, 1968, wherein you, in effect, ask the following questions: 1. "Is 47 O.S. 40-105 [47-40-105](G) (1967), constitutional?" 2. "If 47 O.S. 40-105 [47-40-105](G) (1967), (helmet act) is constitutional, could a city pass an ordinance requiring only those under the age of 21 years of age to wear a helmet while operating or riding on a motorcycle defined under this section?" O.S.L. 1967, ch.140, Section 3, (47 O.S.Supp. 1968 Section 40-105[47-40-105] [47-40-105]) provides in pertinent part "The following equipment shall be required on all motorcycles and all motor scooters except on actual trial rides conducted outside of public roads and highways. "G. Headgear: No person shall operate or ride upon any vehicle covered under this section unless such person is equipped with and wearing on the head a crash helmet of the type and design manufactured for use by the operators of such vehicles. All crash helmets shall consist of lining, padding and chin straps and be of the type as not to distort the view of the driver." Article V, Section 36 Oklahoma Constitution, delegates to the legislature the authority to create laws and it is clear that the regulation of motor vehicles comes within the scope of their authority. According to 60 C.J.S., Motor Vehicles, Section 6, motorcycles are placed in the class of motor vehicles and must comply to the same type legislation that would pertain to motor vehicles. In Collins-Dietz-Morris Co. v. State Corporation Commission, 154 Okl. 121,7 P.2d 123, the court held in the fourth paragraph of the syllabus: "The authority of the state to regulate traffic over the public highways is a part of the police power of the state, and state has the right to say what use shall be made of those highways and to prescribe reasonable restrictions on, and conditions for, their use." But the question presented goes beyond this regulatory power and bounds upon the rights of the individual in operating a motorcycle. These rights are well protected in the due process and equal protection provisions of the United States Constitution, and the Oklahoma Constitution. Article II, Section 2 Oklahoma Constitution, provides: "All persons have the inherent right of life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry." Article II, Section 7 Oklahoma Constitution, provides: "No person shall be deprived of life, liberty, or property, without due process of law." The basic premise that man is the captain of his own ship and the master of his fate has long been followed. The nineteenth century English philosopher John Stewart Mill well stated this maxim in his essays, "Utilitarianism," "Liberty," and "Representative Government." In his essay "On Liberty," he said: ". . . the sole end for which mankind are warranted, individually or collectively, in interfering with the liberty of action of any of their number, is self-protection. That the only purpose for which power can be rightfully exercised over any member of a civilized community, against his will, is to prevent harm to others. His own good, either physical or moral, is not a sufficient warrant. He cannot rightfully be compelled to do or forbear because it will make him happier, because, in the opinion of others, to do so would be wise, or even right. These are good reasons for remonstrating with him, or reasoning with him, but not for compelling him, or visiting him with any evil in case he do otherwise. To justify that, the conduct from which it is desired to deter him must be calculated to produce evil to some one else. The only part of the conduct of any one, for which he is amendable to society, is that which concerns others. In the part which merely concerns himself, his independence is, of right, absolute. Over himself, over his own body and mind, the individual is sovereign." This is consistent with the time-honored legal maxim: "Sic utere tuo ut alienum non laedos." (So use your own that you do not injure that of another.) This doctrine has long been followed in state and federal law and has been the basis for a number of recent decisions involving helmet law. See: People v. Smallwood, 53 Misc.2d 1027,277 N.Y.S.2d 429; People v. Carmichael, 53 Misc.2d 584,279 N.Y.S.2d 272; City of Seattle v. Zektzer ( ), Seattle Municipal Court Department No. 3, and OAG, NMex., Feb. 1, 1966, No. 66-15, p. 19. "Under our constitution and system of government the object and aim is to leave the subject entire master of his own conduct, except in the points wherein the public good requires some direction or restraint." (Emphasis added) Further argument can be found in Cooley's Constitutional Limitations, 8th Ed., p. 1226, and in 16 Am.Jur.2d Constitutional Law, Sections 358 and 359, which provide: "The term `liberty,' as used in the Constitution, is not dwarfed into mere freedom from physical restraint of the person of the citizen, but is deemed to embrace the right of man to be free in the enjoyment of the facilities with which he has been endowed by his Creator, subject only to such restraints as are necessary for the common welfare. Where there is a significant encroachment upon personal liberty, the state may prevail only upon showing a subordinating interest which is compelling. "Personal liberty largely consists of the right of locomotion — to go where and when one pleases — only so far restrained as the rights of others may make it necessary for the welfare of all other citizens. Under this constitutional guaranty one may, therefore, under normal conditions, travel at his inclination along the public highways or in public places, and while conducting himself in an orderly and decent manner, neither interfering with nor disturbing another's rights, he will be protected. . . ." Similarly, in the case of Spann v. Dallas, 111 Tex. 350, 235 S.W. 513, the court held in the body of the opinion: "A law which assumes to be a police regulation, but deprives the citizen of the use of his property under the pretense of preserving the public health, safety, comfort, or welfare, when it is manifest that such is not the real object and purpose of the regulation, will be set aside as a clear and direct invasion of the right of property without any compensating advantages." (Emphasis added) The only case found where a state's police power used to require one to protect himself from himself is Mugler v. State of Kansas, (1887),123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205, where it was pointed out in the body of the opinion: ". . . in the implied compact between the state and the citizen certain rights are reserved by the latter, which are guaranteed by the constitutional provision protecting persons against being deprived of life, liberty, or property, without due process of law, and with which the State cannot interfere; that among those rights is that of manufacturing for one's use either food or drink; and that while, according to the doctrines of the commune, the state may control the tastes, appetites, habits, dress, food, and drink of the people, our system of government, based upon the individuality and intelligence of the citizen, does not claim to control him, except as to his conduct to others, leaving him the sole judge as to all that only affects himself." (Emphasis added) However, the court in this section sustained the prohibition laws of Kansas on the basis that to permit individual manufacture ". . . would tend to cripple, if it did not defeat, the effort to guard the community," and ruled: "No one may rightfully do that which the lawmaking power, upon reasonable grounds, declares to be prejudicial to the general welfare." The argument of an enforcement problem cannot be urged to sustain the legislation now under consideration. The only theory left then for declaring the present helmet law constitutional is to find some direct relationship between it and the public health, safety and welfare. In the second paragraph of the syllabus of Ex parte Fuller,31 Okl.Cr. 264, 238 P. 512, the court held: "The police power of the state is properly directed at those things that affect the public morals, public health, public safety, and is not to be invoked where the subject to which it is directed has no substantial relation to those objects " (Emphasis added) In Bemis v. State, 21 Okl.Cr. 114,152 P. 456, the court held in the second paragraph of the syllabus: "A statutory provision which is not a legitimate police regulation cannot be made such by being placed in the same act with a police regulation, or by being enacted under a title that declares a purpose which would be a proper object for the exercise of that power." (Emphasis added) There are six reported cases found dealing with the constitutionality of helmet laws. Four of these arose in New York with two deciding in favor of constitutionality and two deciding against. In an April 30, 1968, decision, the Court of Appeals of Michigan declared their helmet law unconstitutional. The court of Appeals of Louisiana declared their statute requiring motorcyclists to wear helmets unconstitutional on March 4, 1968. The Court of Appeals of Michigan declared their helmet law unconstitutional since it had no relationship to public health, safety and welfare. In American Motorcycle Association v. Davids, Mich., 158 N.W.2d 72, the court reasoned: "If the purpose truly were to deflect flying objects, rather than to reduce cranial injuries, a windshield requirement imposed on the manufacturer would bear a reasonable relationship to the objective and not vary from the norm of safety legislation customarily imposed on the manufacturer for the protection of the public rather than upon the individual." The court also pointed out in the body of the opinion: "There can be no doubt that the State has a substantial interest in highway safety . . . but the difficulty with adopting this as a basis for decision is that it would also justify a requirement that automobile drivers wear helmets or buckle their seat belts for their own protection." In addition to attacking the constitutionality of the Louisiana helmet law on the grounds that it was a violation of due process, the court concluded it also violated the equal protection clause of the Constitution. In Everhardt v. City of New Orleans, La., 208 So.2d 423, the court stated in the body of the opinion: "Even with the ever increasing expansion of police power, legislation enacted under its guise must concern the interest of the public generally. "Deprivation of personal liberty has been upheld in instances where said restriction operates to promote the public welfare. Thus compulsory vaccination laws are valid because the citizenry at large is protected from a potential smallpox epidemic (Zucht v. King, 260 U.S. 174,43 S.Ct. 24, 67 L.Ed. 194 (1922); however, without a valid benefit flowing to the public generally, an ordinance restricting personal liberty of the individual is in contravention to the individual guarantees safeguarded by the due process clause. ". . . the ordinance also denies plaintiffs the equal protection of laws in that it imposes undue restrictions on one class of motoring public without any salutary effect to the public at large. While it is true that regulations for public safety may press with more or less weight upon one than on the other and remain within the constitutional pale, they must be designed to promote the general good, not to impose unequal or unnecessary restrictions on one limited class without providing a benefit for the public at large." (Emphasis added) In holding the helmet law unconstitutional, the court in People v. Smallwood, 52 Misc.2d 1027,277 N.Y.S.2d 429, stated in the body of the opinion: "An obvious extension of this enactment would be a requirement that all automobile operators, whether operating closed or open automobiles, wear some type of approved, as amended, protective helmet; or that all motorcycle operators wear approved, as amended, protective shin guards, knee or elbow pads; and at night . . . wear a `reflectorized' International Orange colored outer covering of a type and manufacture approved by the Commissioner of Motor Vehicles. ". . . The statute does not require this stated safety device upon the vehicle itself for the purpose of protecting other users of the highways from injuries or damage, it simply removes from the individual the right to exercise his judgment, or preference, in the use of personal adornment, even though capricious." (Emphasis added) In the second New York case declaring their helmet law unconstitutional, the court took notice of the argument that such protective devices possibly keep individuals from becoming charges of the State. In People v. Carmichael, 52 Misc.2d 584, 279 N.Y.S.2d 272, the court noted: "The statute challenged in this case has the direct effect of protecting the physical well being of the person who is subject to the mandate of the statute, and the indirect effect of protecting other persons from the burdens that might result from the death or disability of the person subject to the mandate; the direct effect is to safeguard the motorcyclist and the indirect effect the prevention of the motorcyclist and his dependents from becoming public charges. "As the police power is understood by this court it justifies the regulation of the conduct of one person because of the effect of that conduct upon other persons. Therefore the police power does not justify the statute on the basis of the direct effect alone. Is the indirect effect such that the police power authorizes the statute? "In the opinion of this court it is not. The police power traditionally has not included the power to make a citizen protect his own physical well being. To hold that a citizen may be required to protect his health alone would be an enlargement of the police power beyond traditional limits; it would introduce a novel basis for government power, a new principle upon which to authorize the regulation of the lives of the citizens in a manner and to an extent hitherto unknown. As our society has grown more complex, governmental regulation has necessarily become more complex and complete. Yet for all the extent to which the conduct of citizens has been subject to regulation, there has been no regulation for the sole purpose of making the citizen protect his own physical well being so that others may benefit from it. There are statutes that regulate a citizen in matters that affect his own health. For example, the citizen is restricted in the use of alcohol and narcotics. However, it must be noted such restriction is not the exercise of the police power to make a citizen maintain himself in a state of physical and mental well being so that other persons may not be deprived of sharing the fruits of his good health; it is the exercise of the police power to protect other persons from the harmful conduct of citizens whose behavior toward others is affected by the use of alcohol or narcotics." (Emphasis added) Two recent United States Supreme Court decisions concerning the individual's right to be left alone except where these rights encroach on the general public's welfare are also worth reviewing. In Shelton v. Tucker,364 U.S. 479, 81 S.Ct. 247,5 L.Ed.2d 231, the court held in the body of the opinion: "In a series of decisions this Court has held that, even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." In Griswold v. State of Connecticut, 381 U.S. 479,85 S.Ct. 1678, 14 L.Ed.2d 510, Justice Goldberg in a concurring opinion invoked the Ninth Amendment of the United States Constitution to invalidate a state statute making the use of contraceptives a criminal offense. In holding the use of contraceptives was a private right of the individual free from State control and coercion, he equated this right with the right "to be let alone." In the body of his opinion he stated: "The language and history of theNinth Amendment reveal that the Framers of the Constitution believed that there are additional fundamental rights, protected from governmental infringement, which exist alongside those fundamental rights specifically mentioned in the first eight constitutional amendments." In Olmstead v. United States, 277 US. 438, 48 S.Ct. 564, 72 L.Ed. 944, Justice Louis Brandeis in his now famous dissent also stated this principle of the right of the individual to be let alone by the government. In the body of the opinion he said: "The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man's spiritual nature, of his feelings and of his intellect. They knew that only a part of the pain, pleasure and satisfactions of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. Stanley J. Alexander, OBA #198 — They conferred, as against the government, the right to be let alone — the most comprehensive of rights and the fight most valued by civilized men." (Emphasis added) "Experience should teach us to be most on our guard to protect liberty when the government's purposes are beneficent Men born to freedom are naturally alert to repel invasion of their liberty by evil-minded rulers The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning, but without understanding." (Emphasis added) In conclusion, 47 O.S. 40-105 [47-40-105](G) (1968), has a relationship to the protection of the individual motorcyclist from himself, but not to the public health, safety and welfare. It is, therefore, the opinion of the Attorney General that Section 47 O.S. 40-105 [47-40-105](G), of Title 47, only, requiring all operators and riders of motorcycles to wear a crash helmet while operating a motorcycle is unconstitutional since it has no relationship to the general public health, safety and welfare. Having answered your first question in the negative, your second question becomes moot. (G. T. Blankenship) ** See: opinion no. 75-250 (1975) **