STATE OF NORTH CAROLINA v. KENNETH CALVIN ANDERSON

No. 7

(Filed 12 March 1969)

**1. Constitutional Law § 11— exercise of police power — test of validity**

Statute requiring the operator of a motorcycle on a public highway to wear a protective helmet is a valid exercise of the police power only if it contributes in any real and substantial way to the safety of other travelers.

**2. Statutes § 4—   presumption of constitutionality**

The Supreme Court must assume that acts of the General Assembly are constitutional and within its legislative power until and unless the contrary clearly appears.

**3. Automobiles § 140;   Constitutional Law § 13—   constitutionality of statute requiring motorcycle operators to wear helmets**

The requirement of G.S. 20-140.2(b) that the operator of a motorcycle on a public highway wear a protective helmet *is held* constitutional as a valid exercise of the police power since the statute bears a real and substantial relationship to public safety.

APPEAL by defendant, Kenneth Calvin Anderson, from the decision of the North Carolina Court of Appeals affirming his conviction in the Superior Court of Guilford County upon a charge of violating G.S. 20-140.2(b).

The defendant was first charged by warrant in the Municipal County Court of Greensboro for operating a motorcycle upon the city streets without wearing the required safety helmet. Before plea, he moved for a jury trial. "Pursuant to such motion" the Municipal County Court "forwarded the case to the Superior Court of Guilford County".

In the Superior Court the Grand Jury returned a true bill charging that the defendant operated a motorcycle on the public highway without wearing a protective helmet, in violation of G.S. 20-140.2(b). Before pleading to the charge, he moved to quash the indictment upon the ground the section of the statute under which it is drawn is unconstitutional in that it violates the due process, the equal protection, and the right to privacy provisions of the Ninth and Fourteenth Amendments to the Constitution of the United States and Article I, Sections 1 and 17 of the Constitution of North Carolina.

The court overruled the motion to quash and submitted the case to the jury. From the verdict of guilty and judgment thereon, the defendant appealed to the North Carolina Court of Appeals. The decision is reported in 3 N.C. App. 124. Because of the constitutional questions involved, the defendant, as he had a right to do, appealed to this Court.

*Thomas Wade Bruton, Attorney General; William W. Melvin, Assistant Attorney General; T. Buie Costen, Staff Attorney, for the State.*

*Douglas, Ravenel, Hardy & Crihfield for the defendant.*

HIGGINS, J.

The General Assembly, by Chapter 674, Session Laws of 1967, rewrote Subsection (b) of G.S. 20-140.2 to read as follows:

"(b)   No motorcycle shall be operated upon the streets and highways of this State unless the operator and all passengers thereon wear safety helmets of a type approved by the Commissioner of Motor Vehicles."

The Act became effective on January 1, 1968. The defendant was arrested on January 21, 1968 and charged with operating a motorcycle on the public streets of Greensboro without the required protective helmet.

. Before plea, the defendant moved to quash the indictment upon the ground the statute creating the offense violated his rights under Article I, Section 17, Constitution of North Carolina and under the Fourteenth Amendment of the Constitution of the United States. The defendant contended the statute regulated his private conduct without any showing of such public interest or purpose as would promote or contribute to the public health, morals, safety or welfare. He concedes he has no defense to the charge if the General Assembly had the constitutional power to pass the Act under which the charge is laid.

[1]   If the section of the statute here challenged imposes an unreasonable, arbitrary and capricious restriction on an operator of a motorcycle on the public highway without contributing in any reasonable or substantial way to the safety of travel on the highway, the regulation was outside the police power of the state, and the motion to quash should have been allowed. *State v. Brown,* 250 N.C. 54, 108 S.E. 2d 74; *State v. Ballance,* 229 N.C. 764, 51 S.E. 2d 731; *State v. Harris,* 216 N.C. 746, 6 S.E. 2d 854; *State v. Brockwell,* 209 N.C. 209, 183 S.E. 378. The rule is succinctly stated by the Supreme Court of the United States in the case of *Liggett Co. v. Baldridge,* 278 U.S. 105, 73 L. Ed. 204:

"The police power may be exercised in the form of state legislation where otherwise the effect may be to invade rights granted by the Fourteenth Amendment only when such legislation bears a real and substantial relationship to the public health, safety, morals or some other phase of the public welfare."

If the requirement that the operator of a motorcycle on a public highway wear a protective helmet contributes in any real or substantial way to the safety of other travelers, then the regulation is

a constitutional exercise of police power by the General Assembly, and the motion to quash was properly denied. *State v. Hales,* 256 N.C. 27, 122 S.E. 2d 768; *State v. Warren,* 252 N.C. 690, 114 S.E. 2d 660.

[2] In passing upon the constitutional question involved, this Court must assume that acts of the General Assembly are constitutional and within its legislative power until and unless the contrary clearly appears. *State v. Brockwell, supra;* Strong's N. C. Index 2d, Constitutional Law, Vol. 2, Sec. 6, p. 190.

> ". . . All power which is not limited by the Constitution inheres in the people, and an act of a State legislature is legal when the Constitution contains no prohibition against it. 11 Am. Jur., 619 — Constitutional Law." *Lassiter v. Board of Elections,* 248 N.C. 102, 102 S.E. 2d 853.

[3] For the reasons hereinafter discussed, we think the requirement that a motorcycle operator wear the required safety helmet bears a real and substantial relationship to public safety. The General Assembly, therefore, had ample authority, under its police power, to enact the section of the statute here challenged and to make its violation a criminal offense. We are fortified in this view by many considerations, among them the fact that a majority of our sister states has enacted a similar statute. Michigan's act was passed in 1948, Georgia's in 1962, and New York's effective January 1, 1967. The others have been enacted since 1966. As this Court said in *State v. Whitaker,* 228 N.C. 352, 45 S.E. 2d 860:

> "Great weight must be attached to the fact that so many separate jurisdictions have, within a short space of time, seen fit to exercise their police power in the same manner and for the same purposes. The composite will of such a broad cross section of our country cannot be lightly discarded as unreasonable, arbitrary or capricious or lacking in substantial relationship to its objective."

The recent passage of so many state statutes requiring motorcycle operators to wear the helmet seems to have been triggered by the Act of Congress approved September 9, 1966 (15 U.S.C.A. 1381, et seq) known as "National Traffic and Motor Vehicle Safety Act of 1966". The preamble to the Act recites:

> ". . . That Congress hereby declares that the purpose of this Act is to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents. Therefore, Congress determines that it is necessary to establish motor vehicle safety

standards for motor vehicles and equipment in interstate commerce; . . ."

Section 104 provides:

"(a) The Secretary shall establish a National Motor Vehicle Safety Advisory Council, a majority of which shall be representative of the general public, including representatives of State and local governments, and the remainder shall include representatives of motor vehicle manufacturers, motor vehicle equipment manufacturers, and motor vehicle dealers."

Section 103 provides:

"(a) The Secretary shall establish by order appropriate Federal motor vehicle safety standards. Each such Federal motor vehicle safety standard shall be practicable, shall meet the need for motor vehicle safety, and shall be stated in objective terms.

\*      \*      \*

(d) Whenever a Federal motor vehicle safety standard established under this title is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard. Nothing in this section shall be construed to prevent the Federal Government or the government of any State or political subdivision thereof from establishing a safety requirement applicable to motor vehicles or 'motor vehicle equipment procured for its own use if such requirement imposes a higher standard of performance than that required to comply with the otherwise applicable Federal Standard."

The National Safety Council has promulgated rules, among them the following:

"Each state, in cooperation with its political subdivisions and local governments, must have a motorcycle safety program.

A. *Criteria*

\*      \*      \*

     2. Protective Headgear

         a. Motorcycle operators and their passengers should be required to wear approved protective headgear whenever the vehicle is in motion."

The defendant was indicted in the state court for a violation of state law. The constitutionality of that law is challenged on the ground its passage was beyond the police power of the state. The Act of Congress referred to, and the regulations promulgated under its authority, are clearly applicable to travel in interstate commerce. The same highways carry both interstate and intrastate travel. Uniformity of rules is clearly contemplated and is clearly desirable. The General Assembly no doubt was advertent to the Act of Congress and was well within its constitutional authority in passing the challenged traffic requirement.

The constitutionality of acts requiring motorcycle operators to wear helmets has been passed on by a number of courts. Insofar as our investigation has disclosed, only one (unreversed) appellate decision has held the helmet statute unconstitutional. In *American Motorcycle Association v. Davids*, 158 N.W. 2d 72, decided July 23, 1968, the three judges constituting Division 2 of the Court of Appeals of Michigan held the statute unconstitutional, reversing a contrary holding by the trial judge. Division 2 of the Court of Appeals concluded:

> "The precedential consequences of 'stretching our imagination' to find a relationship to the public health, safety and welfare, require the invalidation of this statute." [Leave to appeal was denied.]

In *Commonwealth v. Howie*, 238 N.E. 2d 373, the Supreme Judicial Court of Massachusetts affirmed a conviction of a motorcycle operator for failure to wear the protective headgear required by the Massachusetts statute, saying:

> "It lies within the power of the Legislature to adopt reasonable measures for the promotion of safety upon public ways in the interests of motorcyclists and others who may use them. . . . The act of the Legislature bears a real and substantial relation to the public health and general welfare and is thus a valid exercise of the police power. . . . A recent Michigan decision to the contrary is not persuasive."

In *People v. Carmichael*, 288 N.Y. 2d 931, decided February 29, 1968, Judge Morton construed the New York statute which required the operator of a motorcycle to wear protective headgear. Judge Morton's opinion recites the results of a special study reported by the State Department of Motor Vehicles to the Legislature and considered by it in passing the act requiring motorcycle operators to wear approved protective headgear. Judge Morton held the New

York statute constitutional, and reversed a contrary holding by the Special Sessions Court of the Town of Oakfield.

The Supreme Court of Rhode Island, in *State v. Lombardi*, 241 A. 2d 625, decided May 8, 1968, passed on the constitutionality of the Rhode Island helmet statute. The Court said:

> "However, it is our unqualified judgment that the purpose sought to be achieved by requiring cyclists to wear protective headgear clearly qualified as a proper subject for legislation.
>
> *        *        *
>
> (T)he requirement of protective headgear for the exposed operator bears a reasonable relationship to highway safety generally. It does not tax the intellect to comprehend that loose stones on the highway kicked up by passing vehicles, or fallen objects such as windblown tree branches . . . against which the operator of a closed vehicle has some protection, could so affect the operator of a motorcycle as to cause him momentarily to lose control and thus become a menace to other vehicles on the highway."

On December 10, 1968 the Supreme Court of Louisiana upheld the constitutionality of the New Orleans city ordinance (passed under its home rule charter) requiring the operator of a motorcycle upon the public streets of New Orleans to wear the prescribed protective headgear. (This decision reversed a Circuit Court decision rendered in the case of *Everhardt v. New Orleans*, 208 S. 2d 423.) The Court found the decision of the Supreme Court of Rhode Island in *Lombardi*, and the Supreme Court of Massachusetts in *Howie* persuasive. Contra, the decision of Division 2, Michigan Court of Appeals in *Davids*.

Valid reasons exist for requiring motorcycle operators to wear helmets. Motorcycle operators occupy positions of extreme exposure which are not shared by automobile and truck drivers. The latter operate in closed vehicles protected by steel and shatterproof glass. Their vehicles have a minimum of four wheels and operate with more stability than two wheeled motorcycles. Any very slight head or hand injury by gravel, small stones, or other objects thrown backward could easily cause a motorcyclist to veer from his course into the travel lane of other vehicles on the highway, or into the path of pedestrians on or near the highway.

The records and briefs in the Court of Appeals and here failed to take note of, or to discuss, the "National Traffic and Motor Vehicle Safety Act of 1966" or the safety rules promulgated thereunder,

although the Act required the Secretary (first of Commerce, later of Transportation) ". . . to advise, assist and cooperate with . . . State and other interested public and private agencies . . . in development of (1) motor vehicle safety standards." It is a permissible inference that, as a part of the State's cooperation, the General Assembly rewrote (b) of G.S. 20-140.2.

We think the opinion of the North Carolina Court of Appeals in this case is supported by sound reason and by abundant authority. The decision is

Affirmed.