463 P.2d 122

**STATE of Arizona, Appellee,**

v.

**Irvin ALSO, Appellant.**

**No. I CA–CR 213.**

Court of Appeals of Arizona.

Division 1.

Dec. 23, 1969.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Irvin Also in pro. per.

KRUCKER, Chief Judge.

Defendant-appellant, Irvin Also, was convicted of failure to wear protective headgear while operating a motorcycle, as provided in A.R.S. § 28–964 and was fined $10. He appealed to the superior court which, trying the case *de novo*, affirmed the fine. Defendant now appeals to this court, challenging the statute's constitutionality.[1]

A.R.S. § 28–964 provides:

"Motorcycles and motor driven cycles; required equipment; exception

"A. The operator and passenger of a motorcycle or motor driven cycle shall at all times, while operating or riding on such motorcycle or motor driven cycle, wear a protective helmet on his head in an appropriate manner safely secured. The operator and passenger of a motorcycle or motor driven cycle shall also wear protective glasses, goggles, or a transparent face shield of a type approved by the commission unless the motorcycle or the motor driven cycle is equipped with a protective windshield. The provisions of this subsection shall not apply to motor driven cycles designed to travel on three wheels.

"B. A motorcycle and motor driven cycle shall be equipped with a rear-view mirror, seat and footrests for the operator. Any motorcycle or motor driven cycle operated with a passenger shall be equipped with seats, footrests, and handrails for such passenger.

"C. Handlebars rising more than fifteen inches above the level of the driver's seat or saddle on a motorcycle or motor driven cycle are prohibited. Added Laws 1968, Ch. 168, § 5."

Its passage followed the enactment by Congress of the National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C.A. § 1381 et seq., which set forth headgear requirements for motorcyclists on interstate highways. The National Safety Council has enacted rules requiring similar state rules for intrastate traffic, a condition for federal funds.

---

1. This court's jurisdiction was appropriately invoked. Shenfield v. City Court of City of Tucson, Pima County, 8 Ariz. App. 81, 443 P.2d 443 (1968).

Similar statutes have been passed in several states, and to date, at least twenty-two courts have rendered decisions upon their constitutionality. Sixteen courts have upheld their respective statutes: Everhardt v. City of New Orleans, 253 La. 285, 217 So. 2d 400 (1968); State v. Craig, 19 Ohio App.2d 29, 249 N.E.2d 75 (1969); Ex Parte Smith, 441 S.W.2d 544 (Tex.Cr. App.1969); Commonwealth v. Howie, 238 N.E.2d 373 (Mass.1968); State ex rel. Colvin v. Lombardi, 241 A.2d 625 (R.I.1968); State v. Mele, 103 N.J.Super. 353, 247 A.2d 176 (1968); State v. Krammes, 105 N.J. Super. 345, 252 A.2d 223 (1969); State v. Anderson, 275 N.C. 168, 166 S.E.2d 49 (1969); People v. Schmidt, 54 Misc.2d 702, 283 N.Y.S.2d 290 (1967); People v. Bielmeyer, 54 Misc.2d 466, 282 N.Y.S.2d 797 (1967); Bisenius v. Karns, 42 Wis.2d 42, 165 N.W.2d 377 (1969); State v. Odegaard, 165 N.W.2d 677 (N.D.1969); State v. Burzycki, 37 L.W. 2448 (Conn.1969); State v. Laitinen, 459 P.2d 789 (Wash. 1969); Kraft v. New York, 396 U.S. 24, 90 S.Ct. 198, 24 L.Ed.2d 145 (1969); People v. Newhouse, 55 Misc.2d 1064, 287 N. Y.S.2d 713 (1968).

Six courts have ruled to the contrary: Everhardt v. City of New Orleans, 208 So.2d 423 (La.App.1968); People v. Fries, 42 Ill.2d 446, 250 N.E.2d 149 (1969); American Motorcycle Association v. Davids, 158 N.W.2d 72 (Mich.1968); People v. Smallwood, 52 Misc.2d 1027, 277 N.Y.S. 2d 429 (1967); People v. Carmichael, 53 Misc.2d 584, 279 N.Y.S.2d 272 (1967); State v. Albertson (D.Id.1969).[2]

The sole question presented as to the constitutionality of this statute is whether or not under the State's police power the failure of a motorcyclist to wear a helmet can be made a crime.

 The primary purpose of the statute is to prevent injury to motorcyclists from cranial trauma. It has also been posed that two secondary purposes are served by the helmet requirement. First, the helmet prevents a motorcyclist from being injured by stones thrown up from the road thereby causing the cyclist to lose control and threaten the safety of other motorists. Second, the helmet prevents a motorcyclist from pursuing a course of conduct which might result in his becoming a public charge.

 It has long been the rule in this jurisdiction that legislative enactments are clothed with a presumption of validity. Laird v. Sims, 16 Ariz. 521, 147 P. 738, L. R.A.1915F, 519 (1915); State v. Locks, 91 Ariz. 394, 372 P.2d 724 (1962). This still means that in order to sustain legislative encroachment on a person's liberty, there must be an obvious and real connection between the regulation and its purpose to protect the public health, safety, morals and public welfare. Edwards v. State Board of Barber Examiners, 72 Ariz. 108, 231 P.2d 450 (1951); State v. Double Seven Corporation, 70 Ariz. 287, 219 P.2d 776, 199 A.L.R.2d 1007 (1950). This also means that when a statute's factual basis is called into question, the existence of facts to sustain the statute are assumed. Uhlmann v. Wren, 97 Ariz. 366, 401 P.2d 113 (1965).

We do not believe that the personal liberty involved here is either insignificant or unrealistic. The right of a cyclist to mount his bike and drive off without donning a helmet is as meaningful as a lone climber ascending a mountain peak or a racing driver speeding down a track. The element of danger adds to the very nature of the motorcycle's appeal. As one author quoted from an old Sioux maxim, "Judge no man until you have walked in his moccasins for three moons." Bisenius v. Karns, 42 Wis.2d 42, 165 N.W.2d 377, at 383 (1969).

2. For Law Review treatment of the validity of such statutes, see the following: Note, 67 Mich.L.Rev. 360 (1968); Note, 30 Ohio State L.J. 355 (1969); Note, 2 Conn.L.Rev. 150 (1969); Note, 30 U. Pitt.L.Rev. 421 (1968); Comment, 73 Dick.L.Rev. 100 (1968); Note, 26 Wash. & Lee L.Rev. 119 (1969).

However, deaths on the highway have mounted beyond the tolls exacted in our warfront overseas. Note, 30 Ohio St.L.J. 355, 357 (1969). Public opinion has been aroused to force automobile manufacturers to make cars safer and has stirred Congress to pass legislation. National Traffic & Motor Vehicle Safety Act of 1966, 15 U.S.C.A. § 1381 et seq.; State v. Anderson, 275 N.C. 168, 166 S.E.2d 49 (1969).

■ We do not believe that the purposes of the Act, whether it be solely directed at the individual's well-being or viewed as coincident with potential threats against public safety, places this regulation on a par with those which the decisions invalidating the statutes have suggested are similar. We do not believe the State can make it a crime to smoke, or to go to bed after 10 p. m. in the normal mode of human living. However, we do not believe the large number of deaths on the highways due to head injuries need be tolerated in the highly dangerous and unique sector of our lives, the highways. The highways we have created have generated dangerous situations as a side product of their basic purpose, and no so basic a need for personal liberty can be found in the freedom to be helmetless that a helmet-mandating regulation requires constitutional prohibition. *Public highways* just cannot be said to provide a place where anyone's encounter with danger can be tolerated. The ramifications are too broad.

We hold, therefore, that the statute in question is a constitutional exercise of the police power in the area of highway safety.

Judgment affirmed.

HATHAWAY and HOWARD, JJ., concur.

Note: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.