OPINION OF THE COURT
Herman H. Tietjen, J.
FACTS
Defendant was issued a uniform traffic summons for having violated Vehicle and Traffic Law § 381 (6), more commonly known as the motorcycle helmet law. At the trial, the arresting officer testified that he first observed defendant at the intersection of New York State Routes 9 and 9G in the Town of Rhinebeck. He followed the motorcycle south on Route 9G because he observed the rider not wearing his helmet on the top of his head. The helmet was being worn "cowboy style,” that is, it was sitting on the back of the head and resting on the top of defendant’s shoulders.
Defendant demonstrated to the court the position of the helmet: namely, the chin strap was elongated, passing under the chin, with the lower back of the helmet resting on his shoulder blade and the front lower edge was resting on the back side of the parietal bone, commonly seen as the back part of the top of the head. The better part of the parietal bone and all of the frontal bone were exposed. The defendant asked the court to take notice of Vehicle and Traffic Law § 381 *152 (6), which states in part "6. It shall be unlawful * * * for any person to operate or ride upon a motorcycle unless he wears a protective helmet of a type approved by the commissioner.”
DISCUSSION
Defendant contends that the statute is silent as to how the helmet is to be worn, and that as long as a helmet is worn, even if "cowboy style”, the requirements of the statute are fulfilled. Certainly, the statute fails to define exactly how on a person’s head the helmet should be positioned. A search of the decisions in this State reveals that the question raised by the defendant has not been addressed by New York’s courts. Thus one must look to the Regulations of the Commissioner of Motor Vehicles.
The regulations are found in 15 NYCRR 54.1 et seq. Section 54.2 (a) states: "Definitions, (a) Protective helmet. A device primarily intended to protect the upper part of the wearer’s head against a blow.” In order to achieve its intended purpose, therefore, the helmet must be worn so that it covers the entire parietal and temporal bones and most of the frontal and occipital bones of the skull. By virtue of the design of the helmets approved by the Commissioner of Motor Vehicles pursuant to authority granted to him in Vehicle and Traffic Law § 381, it would defy logic if one were to conclude that a helmet could be worn "cowboy style” and still satisfy the requirements of the statute.
Previous decisions of the trial courts of this State and other jurisdictions (see, Ann., 32 ALR3d 1270) have concerned themselves with the constitutionality of the helmet law. The courts have taken differing views (see, People v Bennett, 89 Misc 2d 382 [Justice Ct, Albany County 1977] [upholding constitutionality]; People v Smallwood, 52 Misc 2d 1027 [Ct Spec Sess, Monroe County 1967] [finding statute to be unconstitutional]). There is no indication that the State’s highest court has passed on the question of the statute’s constitutionality (see, People v Schmidt, 54 Misc 2d 702 [Erie County Ct 1967], appeal dismissed 23 NY2d 686 [1968]).
Dicta in a number of opinions addressing the constitutionality of the helmet statutes provides one with some additional insight as to how the helmet is to be worn. In People v Schmidt (supra), the court said at page 703: "The danger of flying stones or other objects from the wheels of moving *153 vehicles is a real one. A blow on the head of a cyclist not only could endanger himself, but be the cause of injury or death to other users of the public highways.”
In People v Carmichael (56 Misc 2d 388 [Genesee County Ct 1968]) the court quoted with approval a portion of the Motor Vehicle Commissioner’s legislative memorandum noting at page 390: " 'almost all fatalities occurring as a result of such accidents involve head injuries.’ ”
The North Carolina Supreme Court observed in State v Anderson (275 NC 168, 174, 166 SE2d 49, 53 [1969]): "Valid reasons exist for requiring motorcycle operators to wear helmets. Motorcycle operators occupy positions of extreme exposure which are not shared by automobile and truck drivers * * * Any very slight head or hand injury by gravel, small stones, or other objects thrown backward could easily cause a motorcyclist to veer from his course into the travel lane of other vehicles on the highway, or into the path of pedestrians on or near the highway.” This rationale was given in dicta by the Rhode Island Supreme Court in State ex rel. Colvin v Lombardi (104 RI 28, 31, 241 A2d 625, 627 [1968]) when it commented: "It does not tax the intellect to comprehend that loose stones on the highway kicked up by passing vehicles, or fallen objects such as windblown tree branches, against which the operator of a closed vehicle has some protection, could so affect the operator of a motorcycle as to cause him momentarily to lose control and thus become a menace to other vehicles on the highway.”
It certainly does not tax this court’s intellect to find that wearing a helmet "cowboy style” is the same as not wearing one at all. The purpose of the helmet is to protect the entire head, not just part of it. Loose stones, tree branches, or other objects or circumstances causing injury might impact any part of the head. There certainly would not be sufficient time to permit the motorcycle operator to adjust his helmet in order to protect himself from injury. While the helmet and the face shield do not assure the safety of a motorcyclist against injury, they certainly do lessen the chance of injury to an important part of the human body. As noted in the dicta cited above, the object of the helmet was to protect the entire head and not just part of it.
The defendant is therefore guilty of the above-stated charge.