[Nos. 12748-6-III; 12749-4-III; Division Three. June 28, 1994.]
12534-3-III.

THE STATE OF WASHINGTON, *Petitioner,* v. JACK I.
MAXWELL, ET AL, *Respondents.*

THE CITY OF OMAK, *Respondent,* v. EDWIN A. FISHER,
*Petitioner.*

*Andrew K. Miller, Prosecuting Attorney,* and *Ann K. Colburn, Deputy,* for petitioner State.

*Martin D. Fox* and *Eric R. Draluck,* for petitioner Fisher.

*Christine O. Gregoire, Attorney General,* and *Kim O'Neal, Assistant; Michael D. Howe* and *Calloway & Howe,* for respondent City of Omak.

*Charles Edwin Forrest Alden,* for respondents Maxwell and Sanaski.

MUNSON, J. — We granted discretionary review of the memorandum decision of the Benton County Superior Court reversing district court judgments finding Jack Maxwell and Josh Sanaski had violated RCW 46.37.530(1)(c) which requires persons riding motorcycles to wear approved protective helmets.

We also granted review of the decision of the Okanogan County Superior Court affirming an Omak Municipal Court order finding Edwin Fisher violated RCW 46.37.530(1)(c). Mr. Fisher contends the statute cannot be enforced as to him because his conduct was within a statutory exception which has been rendered unconstitutionally vague by the failure of the State Patrol to adopt implementing regulations. Because these cases involve the constitutionality of RCW 46.37.530(1)(c), they are consolidated for purposes of this opinion.

In 1990 the Legislature enacted the Head Injury Prevention Act, amending RCW 46.37.530 to require all persons riding motorcycles on the public highways to wear protective helmets:

> (1) It is unlawful:
>
> . . . .
>
> (c) For any person to operate or ride upon a motorcycle, motor-driven cycle, or moped on a state highway, county road, or city street unless wearing upon his or her head a protective helmet of a type conforming to rules adopted by the state patrol except when the vehicle is an antique motor-driven cycle or automobile that is licensed as a motorcycle or when the vehicle is equipped with seat belts and roll bars approved by the state patrol. The helmet must be equipped with either a neck or chin strap which shall be fastened securely while the motorcycle or motor-driven cycle is in motion;
>
> . . . .
>
> (2) The state patrol is hereby authorized and empowered to adopt and amend rules, pursuant to the administrative procedure act, concerning the standards and procedures for conformance of rules adopted for glasses, goggles, face shields, and protective helmets.

Laws of 1990, ch. 270, § 7.

The State Patrol has adopted Federal Motor Vehicle Safety Standard 218, 49 C.F.R. § 571.218 (1993) (Standard 218) as the standard for protective helmets.[1] The State Patrol had not approved or adopted rules for the approval of roll bars for motorcycles as of the fall of 1991.

---

[1] The state commission on equipment had previously adopted Standard 218 as the standard for motorcycle helmets under former RCW 46.37.530(3), Laws of 1971, 1st Ex. Sess., ch. 150, § 1; WAC 204-10-010, -040. This became, in effect, adoption by the State Patrol as a result of WAC 204-08-010, filed in 1987: "Whenever used in this title . . . 'state commission on equipment' means the chief of the Washington state patrol." Standard 218 is attached as an appendix.

### The Maxwell and Sanaski Appeals

In the summer of 1991, Messrs. Maxwell and Sanaski were separately issued notices of infraction for violating RCW 46.37.530(1)(c).[2] The District Court found both men had committed the infraction and they appealed to the Superior Court, which reversed the judgments. The Superior Court determined the law is unconstitutionally burdensome and confusing.

 A statute violates the due process clause of the Fourteenth Amendment if it fails to afford citizens fair warning of proscribed conduct. *State v. Coria,* 120 Wn.2d 156, 163, 839 P.2d 890 (1992); *Spokane v. Douglass,* 115 Wn.2d 171, 178, 795 P.2d 693 (1990). The State contends the Superior Court was incorrect in its determination RCW 46.37.530(1)(c) is so unclear it fails to provide the requisite fair warning.

The statute does not involve First Amendment rights; we evaluate its constitutionality as it applies to the facts of the particular case. *Coria,* at 163. The notices of infraction issued to Messrs. Maxwell and Sanaski described the offense as "failure to wear approved helmet . . ."; it is undisputed each was wearing a helmet and the substance of the charge was that the helmet failed to comply with WAC 204-10-040 adopting the federal standards adopted under the statute.

A statute is unconstitutional if it fails to provide fair notice; if the standards to which a citizen must conform are so inaccessible that an average person could not be expected to discover them by reasonable research efforts, then the statute does not provide the requisite notice. *See In re Powell,* 92 Wn.2d 882, 888-89, 602 P.2d 711 (1979); *State v. Dougall,* 89 Wn.2d 118, 570 P.2d 135 (1977).

The administrative regulation for protective helmets in Washington stated in its entirety:

> Federal Motor Vehicle Safety Standard 218 is hereby adopted by reference as the standard for motorcycle helmets.

Former WAC 204-10-040. In order to comply withthestatute and the state regulations, an ordinary citizen would have to know where to find the Federal Motor Vehicle Safety Standards, or Standard 218. Counsel and the court found it because we are aware of the Code of Federal Regulations; the index therein cites us to chapter 49, section 571.218. The regulation itself consists of sections 1 through 7.3.4 and cov-

---

[2] Violation of the statute is a civil traffic infraction. *See* RCW 46.63.010, .020.

ers 16 pages. Within those sections are topics such as scope — purpose — application — definitions — requirements — impact attenuation — penetration — retention system — configuration — projections — labeling — helmet positioning index — selection of appropriate headform — reference marking — helmet positioning — conditioning —impact attenuation test — penetration test — and retention system test. Also included are 7¹/₂ pages of diagrams and 4 pages of charts.

The regulation fails to inform the average citizen of the location or legal citation of the federal standard it adopts. We have not been advised how a citizen of common intelligence should discover this information. RCW 46.37.530, as implemented through WAC 204-10-040, fails to provide citizens with the fair notice required for due process.

A statute is unconstitutional if it fails to define the offense so that ordinary people can understand what it proscribes. *Douglass*, at 178. The standard is "whether persons of common intelligence and understanding have . . . ascertainable standards by which to guide their conduct." *State v. Schimmelpfennig*, 92 Wn.2d 95, 102, 594 P.2d 442 (1979).

The federal regulation has numerous sections relating to the qualities and tests to be supplied by the manufacturer. Ordinary citizens would not be able to tell which protective helmet met those requirements, even if they could find the regulation. In adopting the entire regulation, the State Patrol has made it impossible for ordinary citizens to understand what is required to comply with the Washington statute. The State Patrol should redraft the regulation in ordinary language so that ordinary citizens would know what to look for to be certain they are complying with the law. If the State Patrol feels it must adopt standards for manufacturers, then that should be in a separate regulation.

The trial court did not err in finding the statute and regulation failed to provide the fair notice and ascertainable standards required by the due process clause.

### The Fisher Appeal

Mr. Fisher was issued a notice of infraction on September 16, 1991, for riding a motorcycle without a protective helmet. His motorcycle was equipped with a seatbelt and roll bars supplied by the motorcycle manufacturer.

Mr. Fisher contends RCW 46.37.530 is vague because the State Patrol has not adopted any regulation relating to roll bars. A person of common intelligence cannot determine what is required to bring himself within the exception for motorcycles equipped with seatbelts and roll bars.

■ During oral argument, counsel for the City of Omak suggested a person could bring himself within the roll bar exception by taking his vehicle to a Washington State Patrol office and asking for express approval of a particular roll bar. Due process requires that a penal statute include standards to prevent arbitrary enforcement. *State v. Walsh*, 123 Wn.2d 741, 749, 870 P.2d 974 (1994). The same standard applies to traffic infractions. *Galjour v. General Am. Tank Car Corp.*, 764 F. Supp. 1093 (E.D. La. 1991). Without the adoption of regulations expressly approving particular roll bars or articulating standards for the approval of roll bars, the procedure suggested by counsel for the City of Omak would plainly violate due process requirements.

■■ Mr. Fisher argues in the absence of administrative action approving roll bars he was entitled to the benefit of his good faith effort to comply with the law by having any roll bars on his motorcycle. Statutes are construed to effect their legislative purpose. *State v. McDougal*, 120 Wn.2d 334, 350, 841 P.2d 1232 (1992). The express purpose of the Head Injury Prevention Act helmet requirement is to "reduce the occurrence of head injury". RCW 43.70.400. The roll bars on Mr. Fisher's motorcycle are those commonly called "roll bars" in the motorcycle vernacular in that they extend out from the sides and around the rear of the back and front wheels, not over the head. Such bars serve to protect the operator's legs from being trapped if the motorcycle falls over but would not be effective in preventing head injury. *See Miller v. White*, 222 Va. 311, 281 S.E.2d 802 (1981). The evidence does not disclose the existence of any other type of roll bar which would be suitable for approval. When the Legislature delegates power to approve, it also delegates power to disapprove. *State v. Crown Zellerbach Corp.*, 92 Wn.2d 894, 899, 602 P.2d 1172 (1979). The Washington State Patrol is not required to approve such roll bars under the statute. No roll bar has been approved; the roll bar exception to the helmet requirement is not in effect.

In the absence of an exception for motorcycles equipped with roll bars, Mr. Fisher was required to wear a helmet. Having determined the adoption of Standard 218 (WAC 204-10-040) renders the helmet requirement of RCW 46.37.530(1)(c) unconstitutionally vague, we conclude Mr. Fisher could not be required to wear a helmet.

The charges against Messrs. Maxwell and Sanaski are dismissed. The judgment against Mr. Fisher is reversed.

THOMPSON, C.J., and SCHULTHEIS, J., concur.

§ 571.218 Standard No. 218; Motorcycle helmets.

S1. Scope. This standard establishes minimum performance requirements for helmets designed for use by motorcyclists and other motor vehicle users.

S2. Purpose. The purpose of this standard is to reduce deaths and injuries to motorcyclists and other motor vehicle users resulting from head impacts.

S3. Application. This standard applies to all helmets designed for use by motorcyclists and other motor vehicle users.

S4. Definitions.

Basic plane means a plane through the centers of the right and left external ear openings and the lower edge of the eye sockets (Figure 2) of a reference headform (Figure 2) or test headform.

Helmet positioning index means the distance in inches, as specified by the manufacturer, from the lowest point of the brow opening at the lateral midpoint of the helmet to the basic plane of a reference headform, when the helmet is firmly and properly positioned on the reference headform.

Midsagittal plane means a longitudinal plane through the apex of a reference headform or test headform that is perpendicular to the basic plane (Figure 3).

Reference headform means a measuring device contoured to the dimensions of one of the three headforms described in Table 2 and Figures 5 through 8 with surface markings indicating the locations of the basic, midsagittal, and reference planes, and the centers of the external ear openings.

Reference plane means a plane above and parallel to the basic plane on a reference headform or test headform (Figure 2) at the distance indicated in Table 2.

Retention system means the complete assembly by which the helmet is retained in position on the head during use.

Test headform means a test device contoured to the dimensions of one of the three headforms described in Table 2 and Figures 5 through 8 with surface markings indicating the locations of the basic, midsagittal, and reference planes.

---

§ 571.211

S5. Requirements. Each helmet shall meet the requirements of S5.1, S5.2 and S5.3 when subjected to any conditioning procedure specified in S6.4 and tested in accordance with S7.1, S7.2, and S7.3.

S5.1 Impact attenuation. When an impact attenuation test is conducted in accordance with S7.1, all of the following requirements shall be met:

(a) Peak accelerations shall not exceed 400g;

(b) Accelerations in excess of 200g shall not exceed a cumulative duration of 2.0 milliseconds; and

(c) Accelerations in excess of 150g shall not exceed a cumulative duration of 4.0 milliseconds.

S5.2 Penetration. When a penetration test is conducted in accordance with S7.2, the striker shall not contact the surface of the test headform.

S5.3 Retention system.

S5.3.1 When tested in accordance with S7.3:

(a) The retention system or its components shall attain the loads specified without separation; and

(b) The adjustable portion of the retention system test device shall not move more than 1 inch (2.5 cm) measured between preliminary and test load positions.

S5.3.2 Where the retention system consists of components which can be independently fastened without securing the complete assembly, each such component shall independently meet the requirements of S5.3.1.

S6. Configuration. Each helmet shall have a protective surface of continuous contour at all points on or above the test line described in S6.2.3. The helmet shall provide peripheral vision clearance of at least 105° to each side of the mid-sagittal plane, when the helmet is adjusted as specified in S6.3. The vertex of these angles, shown in Figure 3, shall be at the point on the anterior surface of the reference headform at the intersection of the mid-sagittal and basic planes. The brow opening of the helmet shall be at least 1 inch (2.5 cm) above all points in the basic plane that are within the angles of peripheral vision (see Figure 3).

S6. Projections. A helmet shall not have any rigid projections inside its

---

§ 571.218

shell. Rigid projections outside any helmet's shell shall be limited to those required for operation of essential accessories, and shall not protrude more than 0.20 inch (5 mm).

S6.6 Labeling.

S6.6.1 Each helmet shall be labeled permanently and legibly, in a manner such that the label(s) can be read easily without removing padding or any other permanent part, with the following:

(a) Manufacturer's name or identification.

(b) Precise model designation.

(c) Size.

(d) Month and year of manufacture. This may be spelled out (for example, June, 1988), or expressed in numerals (for example, 6/88).

(e) The symbol DOT, constituting the manufacturer's certification that the helmet conforms to the applicable Federal motor vehicle safety standards. This symbol shall appear on the outer surface, in a color that contrasts with the background, in letters at least ⅜ inch (1 cm) high, centered laterally with the horizontal centerline of the symbol located a minimum of 1⅛ inches (2.9 cm) and a maximum of 1¾ inches (3.5 cm) from the bottom edge of the posterior portion of the helmet.

(f) Instructions to the purchaser as follows:

(1) Shell and liner constructed of (identify type(s) of material(s)).

(2) "Helmet can be seriously damaged by some common substances without damage being visible to the user. Apply only the following: (Recommended cleaning agents, paints, adhesives, etc., as appropriate).

(3) "Make no modifications. Fasten helmet securely. If helmet experiences a severe blow, return it to the manufacturer for inspection, or destroy it and replace it."

(4) Any additional relevant safety information should be applied at the time of purchase by means of an attached tag, brochure, or other suitable means.

S5.7 Helmet positioning index. Each manufacturer of helmets shall establish a positioning index for each helmet. This index shall be furnished immediately to any person who requests the information,

---

with respect to a helmet identified by manufacturer, model designation, and size.

S6. Preliminary test procedures. Before subjecting a helmet to the testing sequence specified in S7., prepare it according to the procedures in S6.1, S6.2, and S6.3.

S6.1 Selection of appropriate headform.

S6.1.1 A helmet with a manufacturer's designated discrete size or size range which does not exceed 6¾ (European size 54) is tested on the small headform. A helmet with a manufacturer's designated discrete size or size range which exceeds 6¾, but does not exceed 7⅝ (European size: 60) is tested on the medium headform. A helmet with a manufacturer's designated discrete size or size range which exceeds 7⅝ is tested on the large headform.

S6.1.2 A helmet with a manufacturer's designated size range which includes sizes falling into two or all three size ranges described in S6.1.1 is tested on each headform specified for each size range.

S6.2 Reference marking.

S6.2.1 Use a reference headform that is firmly seated with the basic and reference planes horizontal. Place the complete helmet to be tested on the appropriate reference headform, as specified in S6.1.1 and S6.1.2.

S6.2.2 Apply a 10-pound (4.5 kg) static vertical load through the helmet's apex. Center the helmet laterally and seat it firmly on the reference headform according to its helmet positioning index.

S6.2.3 Maintaining the load and position described in S6.2.2, draw a line (hereinafter referred to as "test line") on the outer surface of the helmet coinciding with portions of the intersection of that surface with the following planes, as shown in Figure 2.

(a) A plane 1 inch (2.5 cm) above and parallel to the reference plane in the anterior portion of the reference headform;

(b) A vertical transverse plane 2.5 inches (6.4 cm) behind the point on the anterior surface of the reference headform at the intersection of the mid-sagittal and reference planes;

(c) The reference plane of the reference headform;

(d) A vertical transverse plane 2.5 inches (6.4 cm) behind the center of the external ear opening in a side view; and

(e) A plane 1 inch (2.5 cm) below and parallel to the reference plane in the posterior portion of the reference headform.

**S6.3 Helmet positioning.**

S6.3.1 Before each test, fix the helmet on a test headform in the position that conforms to its helmet positioning index. Secure the helmet so that it does not shift position before impact or before application of force during testing.

S6.3.2 In testing as specified in S7.1 and S7.2, place the retention system in a position such that it does not interfere with free fall, impact or penetration.

**S6.4 Conditioning.**

S6.4.1 Immediately before conducting the testing sequence specified in S7, condition each test helmet in accordance with any one of the following procedures:

(a) Ambient conditions. Expose to a temperature of 70°F(21°C) and a relative humidity of 50 percent for 12 hours.

(b) Low temperature. Expose to a temperature of 14°F(-10°C) for 12 hours.

(c) High temperature. Expose to a temperature of 122°F(50°C) for 12 hours.

(d) Water immersion. Immerse in water at a temperature of 77°F(25°C) for 12 hours.

S6.4.2 If during testing, as specified in S7.1.3 and S7.2.3, a helmet is returned to the conditioning environment before the time out of that environment exceeds 4 minutes, the helmet is kept in the environment for a minimum of 3 minutes before the resumption of testing with that helmet. If the time out of the environment exceeds 4 minutes, the helmet is returned to the environment for a minimum of 3 minutes for each minute or portion of a minute that the helmet remained out of the environment in excess of 4 minutes or for the maximum of 12 hours, whichever is less before the resumption of testing with that helmet.

**S7. Test conditions.**

**S7.1 Impact attenuation test.**

S7.1.1 Impact attenuation is measured by determining acceleration imparted to an instrumented test headform on which a complete helmet is mounted as specified in S8.3, when it is dropped in guided free fall upon a fixed hemispherical anvil and a fixed flat steel anvil.

S7.1.2 Each helmet is impacted at four sites with two successive identical impacts at each site. Two of these sites are impacted upon a flat steel anvil and two upon a hemispherical steel anvil as specified in S7.1.10 and S7.1.11. The impact sites are at any point on the area above the test line described in paragraph S6.2.3, and separated by a distance not less than one-sixth of the maximum circumference of the helmet in the test area.

S7.1.3 Impact testing at each of the four sites, as specified in S7.1.2, shall start at two minutes, and be completed by four minutes, after removal of the helmet from the conditioning environment.

S7.1.4 (a) The guided free fall drop height for the helmet and test headform combination onto the hemispherical anvil shall be such that the minimum impact speed is 17.1 feet/second (5.2 m/sec). The minimum drop height is 54.5 inches (138.4 cm). The drop height is adjusted upward from the minimum to the extent necessary to compensate for friction loss.

(b) The guided free fall drop height for the helmet and test headform combination onto the flat anvil shall be such that the minimum impact speed is 19.7 ft./sec (6.0 m/sec). The minimum drop height is 72 inches (182.9 cm). The drop height is adjusted upward from the minimum to the extent necessary to compensate for friction loss.

S7.1.5 Test headforms for impact attenuation testing are constructed of magnesium alloy (K–1A), and exhibit no resonant frequencies below 2,000 Hz.

S7.1.6 The monorail drop test system is used for impact attenuation testing. S7.1.7 The weight of the drop assembly, as specified in Table I, is the combined weight of the test headform and the supporting assembly for the drop test. The weight of the supporting as-

§ 571.218

sembly is not less than 2.0 lbs. and not more than 2.4 lbs. (0.9 to 1.1 kg). The supporting assembly weight for the monorail system is the drop assembly weight minus the combined weight of the test headform, the headform's clamp down ring, and its tie down screws.

S7.1.8 The center of gravity of the test headform is located at the center of the mounting ball on the supporting assembly and its location within a cone with its axis vertical and forming a 10° included angle with the vertex at the point of impact. The center of gravity of the drop assembly lies within the rectangular volume bounded by x = −0.25 inch (−0.64 cm), x = 0.85 inch (2.16 cm), y = −0.25 inch (0.64 cm), and y = −0.25 inch (−0.64 cm) with the origin located at the center of gravity of the test headform. The rectangular volume has its y-z vertical plane and its z-x vertical plane parallel to the z axis. The x-y-z axis system is orthogonal and has its x axis and z axis in the vertical longitudinal zero degree plane and its y axis in the left-to-right vertical lateral zero degree plane. (See Figure 5). The x-y-z axes of the test headform assembly or a monorail drop test equipment are oriented as follows: From the origin, the x axis is horizontal with positive direction going toward and passing through the vertical centerline of the monorail. The positive z axis is downward. The y-axis also is horizontal and its direction can be decided by the z- and x-axes, using the right-hand rule.

S7.1.9 The acceleration transducer is mounted at the center of gravity of the test headform with the sensitive axis aligned to within 5° of vertical when the test headform assembly is in the impact position. The acceleration data channel complies with SAE Recommended Practice J211 JUN 80, Instrumentation for Impact Tests, requirements for channel class 1,000.

S7.1.10 The flat anvil is constructed of steel with a 5-inch (12.7 cm) minimum diameter impact face, and the hemispherical anvil is constructed of steel with a 1.9 inch (4.8 cm) radius impact face.

49 CFR Ch. V (10-1-92 Edition)

S7.1.11 The rigid mount (or both of the anvils consists of a solid mass of at least 300 pounds (136.1 kg), the outer surface of which consists of a steel plate with minimum thickness of 1 inch (2.5 cm) and minimum surface area of 1 ft.²(929 cm²).

S7.1.12 The drop system restricts side movement during the impact attenuation test so that the sum of the areas bounded by the acceleration-time response curves for both the x- and y-axes (horizontal axes) is less than five percent of the area bounded by the acceleration-time response curve for the vertical axis.

**S7.2 Penetration test.**

S7.2.1 The penetration test is conducted by dropping the penetration test striker in guided free fall, with its axis aligned vertically, onto the outer surface of the complete helmet, when mounted as specified in S8.3, at any point above the test line, described in S8.2.3, except on a fastener or other rigid projection.

S7.2.2 Two penetration blows are applied at least 3 inches (7.6 cm) apart, and at least 3 inches (7.6 cm) from the centers of any impacts applied during the impact attenuation test.

S7.2.3 The application of the two penetration blows, specified in S7.2.2, starts at two minutes and is completed by four minutes, after removal of the helmet from the conditioning environment.

S7.2.4 The height of the guided free fall is 118.1 inches (3 m), as measured from the striker point, to the impact point on the outer surface of the test helmet.

S7.2.5 The contactable surface of the penetration test headform is constructed of a metal or metallic alloy having a Brinell hardness number no greater than 55, which will permit ready detection should contact by the striker occur. The surface is refinished if necessary before each penetration test blow to permit detection of contact by the striker.

S7.2.6 The weight of the penetration striker is 6 pounds, 10 ounces (3 kg).

S7.2.7 The point of the striker has an included angle of 60°, a cone height of 1.5 inches (3.8 cm), a tip radius of 0.02 inch (standard 0.5 millimeter

## Nat'l Highway Traffic Safety Admin., DOT § 571.218

radius) and a minimum hardness of 60 Rockwell, C-scale.

S7.2.5 The rigid mount for the penetration test headform is as described in S7.1.11.

S7.3 *Retention system test.*

S7.3.1 The retention system test is conducted by applying a static tensile load to the retention assembly of a complete helmet, which is mounted, as described in S6.3, on a stationary test headform as shown in Figure 4, and by measuring the movement of the adjustable portion of the retention system test device under tension.

S7.3.2 The retention system test device consists of both an adjustable loading mechanism by which a static tensile load is applied to the helmet retention assembly and a means for holding the test headform and helmet stationary. The retention assembly is fastened around two freely moving rollers, both of which have a 0.5 inch (1.3 cm) diameter and a 3-inch (7.6 cm) center-to-center separation, and which are mounted on the adjustable portion of the tensile loading device (Figure 4). The helmet is fixed on the test headform as necessary to ensure that it does not move during the applica-

tion of the test loads to the retention assembly.

S7.3.3 A 50-pound (22.7 kg) preliminary test load is applied to the retention assembly, normal to the basic plane of the test headform and symmetrical with respect to the center of the retention assembly for 30 seconds, and the maximum distance from the extremity of the adjustable portion of the retention system test device to the apex of the helmet is measured.

S7.3.4 An additional 250-pound (113.4 kg) test load is applied to the retention assembly, in the same manner and at the same location as described in S7.3.3, for 120 seconds, and the maximum distance from the extremity of the adjustable portion of the retention system test device to the apex of the helmet is measured.

APPENDIX TO § 571.218

TABLE 1—WEIGHTS FOR IMPACT ATTENUATION TEST

**Drop Assembly**

| Test headform size | Weight [1]—kg |
|---|---|
| Small | 7.8 (3.5 kg) |
| Medium | 11.0 (5.0 kg) |
| Large | 13.4 (6.1 kg) |

[1] Combined weight of instrumented test headform and supporting assembly for drop test.

## § 571.218 49 CFR Ch. V (10-1-92 Edition)

Vertical Transverse Plane As Determined by S6.2.3(a)

2.5 inches (6.4 cm)

Test Line 1 inch (2.5 cm) Above Reference Plane

Reference Plane

Vertical Transverse Plane As Determined by S6.2.3(a)

2.5 inches (6.4 cm)

Basic Plane

Test Line 1 inch (2.5 cm) Below Reference Plane

Center of External Ear Opening [See Table 2]

Note: Solid lines would correspond to the test line on a test helmet.

☐ Test Surface

Figure 2

BASIC PLANE

LOWER EDGE OF EYE SOCKET

CENTER OF EXTERNAL EAR OPENING

Figure 1

§ 571.218

RETENTION SYSTEM TEST DEVICE

Figure 4

TEST HELMET

RETENTION ASSEMBLY

APPLICATION OF STATIC TENSILE LOAD

STATIONARY TEST HEADFORM

FREELY MOVING ROLLERS MOUNTED ON ADJUSTABLE PORTION OF RETENTION SYSTEM TEST DEVICE WITH DIAMETERS 0.5 INCH; AND CENTER-TO-CENTER SEPARATION 3 INCHES.

---

Nat'l Highway Traffic Safety Admin., DOT

§ 571.218

SECTION THROUGH THE BASIC PLANE

TOP VIEW

REFERENCE HEADFORM

MID-SAGITTAL PLANE

HELMET

MINIMUM ANGLE PERIPHERAL VISION CLEARANCE

105°

Figure 3

§ 571.218

49 CFR Ch. V (10-1-92 Edition)

## Table 2

### Medium Headform—Exterior Dimensions

| θ | Bottom Opening Z = -3.02 | | | Level-5 Z = -2.500 | | |
|---|---|---|---|---|---|---|
| | R | X | Y | R | X | Y |
| 0 | 4.292 | 4.292 | 0 | 4.293 | 4.293 | 0 |
| 10 | 4.206 | 4.201 | 0.741 | 4.270 | 4.205 | 0.242 |
| 20 | 4.159 | 4.306 | 1.423 | 4.172 | 3.920 | 1.427 |
| 30 | 3.967 | 3.436 | 1.984 | 3.951 | 3.431 | 1.951 |
| 40 | 3.600 | 2.904 | 2.353 | 3.670 | 2.811 | 2.359 |
| 50 | 3.322 | 2.142 | 2.553 | 3.362 | 2.116 | 2.559 |
| 60 | 3.059 | 1.520 | 2.632 | 3.167 | 1.534 | 2.666 |
| 70 | 2.833 | 0.971 | 2.689 | 2.889 | 0.951 | 2.709 |
| 80 | 2.720 | 0.472 | 2.675 | 2.772 | 0.481 | 2.770 |
| 90 | 2.675 | 0 | 2.679 | 2.769 | 0 | 2.783 |
| 100 | 2.703 | -0.401 | 2.662 | 2.724 | -0.471 | 2.606 |
| 110 | 2.704 | -0.956 | 2.607 | 2.794 | -0.955 | 2.506 |
| 120 | 2.889 | -1.444 | 2.501 | 2.817 | -1.449 | 2.329 |
| 130 | 2.916 | -1.919 | 2.797 | 3.040 | -1.954 | 2.041 |
| 140 | 3.100 | -2.375 | 1.933 | 3.175 | -2.432 | 1.615 |
| 150 | 3.175 | -2.750 | 1.269 | 3.223 | -2.799 | 1.110 |
| 160 | 3.196 | -2.594 | 1.009 | 3.246 | -3.050 | 0.562 |
| 170 | 3.177 | -3.129 | 0.562 | 3.231 | -3.108 | 0 |
| 180 | 3.187 | -3.187 | 0 | 3.244 | -3.244 | 0 |

| θ | Basic Plane Z = -2.300 | | | Level-4 Z = -2.700 | | |
|---|---|---|---|---|---|---|
| | R | X | Y | R | X | Y |
| 0 | 4.272 | 4.272 | 0 | 4.247 | 4.247 | 0 |
| 10 | 4.248 | 4.201 | 0.728 | 4.223 | 4.159 | 0.703 |
| 20 | 4.147 | 3.907 | 1.418 | 4.120 | 3.872 | 1.409 |
| 30 | 3.961 | 3.433 | 1.981 | 3.940 | 3.413 | 1.970 |
| 40 | 3.687 | 2.824 | 2.370 | 3.863 | 2.801 | 2.357 |
| 50 | 3.394 | 2.175 | 2.592 | 3.332 | 2.110 | 2.508 |
| 60 | 3.111 | 1.566 | 2.694 | 3.132 | 1.566 | 2.712 |
| 70 | 2.927 | 1.001 | 2.751 | 2.900 | 1.012 | 2.782 |
| 80 | 2.815 | 0.483 | 2.772 | 2.800 | 0.487 | 2.817 |
| 90 | 2.779 | 0 | 2.779 | 2.808 | 0 | 2.818 |
| 100 | 2.802 | -0.487 | 2.759 | 2.861 | -0.497 | 2.818 |
| 110 | 2.807 | -0.957 | 2.713 | 2.858 | -1.012 | 2.783 |
| 120 | 3.019 | -1.510 | 2.615 | 3.008 | -1.548 | 2.663 |
| 130 | 3.130 | -1.994 | 2.408 | 3.008 | -2.006 | 2.497 |
| 140 | 3.206 | -2.533 | 2.125 | 3.495 | -2.608 | 2.185 |
| 150 | 3.339 | -2.943 | 1.009 | 3.516 | -3.046 | 1.758 |
| 160 | 3.468 | -3.250 | 1.183 | 3.595 | -3.309 | 1.226 |
| 170 | 3.405 | -3.422 | 0.000 | 3.612 | -3.567 | 0.627 |
| 180 | 3.412 | -3.412 | 0 | 3.003 | -3.003 | 0 |

5510

Nat'l Highway Traffic Safety Admin., DOT

§ 571.218

### Figure 5

#### HEADFORM SECTIONS

Mid Sagittal Plane (Symmetrical Plane)

Apex

+5 +4 +3 +2 +1

Level +2

Reference Plane

Z

X

Z=0

Coordinate Origin
for Table

-1 -2 -3 -4 -5

Basic Plane

Bottom Opening

Front

Rear

#### Headform Coordinate Systems (Right-hand Rule)

O

Z=0

Y

R

φ

θ=0

X

P
(X, Y, Z)
or (R, θ, Z)

Front
(Slot Area)

Reference Plane

5511

Nat'l Highway Traffic Safety Admin., DOT

§ 571.218

Table 2

Medium Headform—Exterior Dimensions (Continued)

§ 571.218

49 CFR Ch. V (10-1-92 Edition)

Table 2

Medium Headform—Exterior Dimensions (Continued)

§ 571.218

49 CFR Ch. V (10-1-92 Edition)

Figure 8

Small Headform—Interior Design

Note: To obtain metric conversions in centimeters, multiply each figure by 2.54.

Section A-A

---

Nat'l Highway Traffic Safety Admin., DOT § 571.218

Table 2

Medium Headform—Exterior Dimensions (Continued)

| θ | Level +1 Z=2.250 | | | Level +8 Z=2.550 | | |
|---|---|---|---|---|---|---|
| | r | X | Y | r | X | Y |

| θ | Level +7 Z=2.750 | | |
|---|---|---|---|
| | r | X | Y |

Notes:

1. Apex is located at (0.76, 0, 2.07) for (X,Y,Z) or (0.76, (90), 3.02) for (R, Θ, Z).

2. Center of ear opening is located at (2.42, 2.78, -2.38) for (X,Y,Z) or (3.90, 61.8, -2.38) for (R,Θ,Z).

3. Scale all dimensions by 0.9841 for small headform.

4. Scale all dimensions by 1.099 for large headform.

5. Headform is symmetrical about the mid-sagittal plane.

6. Units: X,Y,Z = inches. Θ = degrees.

7. To obtain metric equivalents in millimeters, multiply each figure by 25.4.

Nat'l Highway Traffic Safety Admin., DOT

§ 571.218

§ 571.218

49 CFR Ch. V (10-1-92 Edition)

Figure 7

Medium Headform—Interior Design

Figure 8

Large Headform—Interior Design

Note:
To obtain metric equivalents in centimeters, multiply each figure by 2.54.

Note:
To obtain metric equivalents in centimeters, multiply each figure by 2.54.

[39 FR 22391, Aug. 20, 1973, as amended at 39 FR 3554, Jan. 28, 1974; 45 FR 15181, Mar. 10, 1980; 53 FR 11288, Apr. 6, 1988; 53 FR 12523, Apr. 15, 1988]