98 P.3d 1184 (2004)
STATE of Washington, Appellant,
v.
Trevor W. ECKBLAD, Respondent.
No. 74109-3.
Supreme Court of Washington, En Banc.
Argued May 18, 2004.
Decided October 14, 2004.
Erik Pedersen, Skagit Co. Pros. Atty. Office, Mount Vernon, for Appellant.
Susan Goolsbee, Skagit Cty. Pub. Defender, Mount Vernon, Eric Michael Weight, Bellingham, for Respondent.
Timothy R. Johnson, Seattle, Janet G. Gemberling, Spokane, for Amicus Curiae Wash. Ass'n. of Criminal Defense Lawyers.
Pamela Beth Loginsky, Wash. Ass'n. of Pros. Atty., Olympia, for Amicus Curiae Wash. Ass'n. of Pros. Attys. and Wash. Ass'n. of Sheriffs and Police Chiefs.
Shannon Elizabeth Inglis, Atty. Gen's. Office/Criminal Justice, Seattle, for Amicus Curiae Wash. State Patrol and Wash. Traffic Safety Com'n.
CHAMBERS, J.
We must decide whether RCW 46.61.688 is unconstitutionally void for vagueness. Washington's seat belt law is hardly a model of clarity; however, we conclude that the statute is not facially void, and Trevor Eckblad does not establish it is void as applied to the facts of his case.

*1185 BACKGROUND
Washington State has required most drivers and passengers of motor vehicles to wear seat belts since 1986. Former RCW 46.61.688 (1986). Recently, the State has intensified its efforts to increase seat belt use, and the failure to wear one is now a primary offense. RCW 46.61.688. While drivers and passengers are usually required to wear seat belts, Washington has exempted some categories of vehicles (generally, vehicles not required to have seat belts under federal law) and some types of uses (such as rural postal carriers, rural newspaper carriers, utility meter readers, refuge and recycling collectors, and prisoner transports) from the statute. RCW 46.61.688; 49 C.F.R. § 571.208; WAC 204-41-030 through -070.
In February 2003, a state patrol officer saw a seat belt dangling in the window of a traveling 1982 pickup truck, near the head of a clearly unseat-belted passenger. The officer stopped the vehicle, spoke with the occupants, and arrested the unseat-belted passenger on two unrelated warrants. The officer also noticed the smell of alcohol and marijuana wafting from the cab. Eckblad, one of the passengers, admitted the marijuana was his. He was arrested, and a search incident to arrest unearthed a 9 millimeter handgun, a loaded magazine, and a box of ammunition in a pillow case. Eckblad informed the officer that the weapon and ammunition was also his. It unfolded that Eckblad had prior convictions for assault and larceny, and he was ultimately charged with being a felon in possession of a firearm.
Because these charges were precipitated by the failure of a fellow passenger to wear a seat belt, Eckblad moved to suppress the evidence as the fruit of an illegal stop. The trial judge held that RCW 46.61.688 is unconstitutionally vague, granted the motion to suppress, and dismissed the case. We granted direct review.

ANALYSIS
We review the constitutionality of a statute de novo. Ino Ino, Inc. v. City of Bellevue, 132 Wash.2d 103, 114, 937 P.2d 154, 943 P.2d 1358 (1997). Vagueness challenges "are evaluated in light of the particular facts of each case," unless the First Amendment is implicated. City of Bremerton v. Spears, 134 Wash.2d 141, 159, 949 P.2d 347 (1998) (citing City of Spokane v. Douglass, 115 Wash.2d 171, 795 P.2d 693 (1990)). No free speech issue is raised here.
A statute is vague if either it fails to define the offense with sufficient precision that a person of ordinary intelligence can understand it, or if it does not provide standards sufficiently specific to prevent arbitrary enforcement. Douglass, 115 Wash.2d at 178, 795 P.2d 693. Arbitrary enforcement is not at issue here; instead, we decide only whether RCW 46.61.688 is sufficiently precise for a person of ordinary intelligence to understand it.
The statute states in relevant part:
Safety belts, use requiredPenaltiesExemptions. (1) [Definitions].
(2) This section only applies to motor vehicles that meet the manual seat belt safety standards as set forth in federal motor vehicle safety standard 208 and to neighborhood electric vehicles. This section does not apply to a vehicle occupant for whom no safety belt is available when all designated seating positions as required by federal motor vehicle safety standard 208 are occupied.
(3) Every person sixteen years of age or older operating or riding in a motor vehicle shall wear the safety belt assembly in a properly adjusted and securely fastened manner.

....
(8) The state patrol may adopt rules exempting operators or occupants of farm vehicles, construction equipment, and vehicles that are required to make frequent stops from the requirement of wearing safety belts.
RCW 46.61.688 (emphasis added).
Essentially, Eckblad argues that the statute is vague because it incorporates detailed standards that are difficult to find. But this does not overcome the strong presumption of constitutionality. Douglass, 115 Wash.2d at 177, 795 P.2d 693. First, specificity does not render a statute vague. E.g., Pennsylvania v. Hull, 705 A.2d 911, 913 (Pa.Super.1998) (statute requiring motorcyclists to wear helmets not unconstitutionally vague merely because the helmet requirements *1186 were specific and technical). Second, compliance with the bedrock requirement of the lawthat drivers and passengers in motor vehicles wear seat belts unless exempteddoes not turn on the scope of the exceptions. Cf. San Filippo v. Bongiovanni, 961 F.2d 1125, 1135 (3d Cir.1992) (void for vagueness doctrine exists to require statutes to put ordinary persons on notice of what conduct is prohibited).[1]
While seat belt laws have not yet been challenged across the nation as unconstitutionally vague, the closely related regime of motorcycle helmet laws has been challenged in many of our sister states. See generally Alan S. Wasserstrom, Annotation, VALIDITY OF TRAFFIC REGULATIONS REQUIRING MOTORCYCLISTS TO WEAR HELMETS OR OTHER PROTECTIVE HEADGEAR, 72 A.L.R.5th 607 (1999) (collecting cases). Courts have almost uniformly found that these statutes are not unconstitutionally vague, so long as the motorcyclist is put on notice of the general requirement of the law and given a meaningful opportunity to comply. See ABATE of Ga., Inc. v. Georgia, 137 F.Supp.2d 1349, 1355 (N.D.Ga.2001) (rejecting vagueness challenge "because the statute clearly proscribes some conduct, such as riding a motorcycle without any protective head-covering whatsoever.") aff'd, 264 F.3d 1315 (11th Cir.2001); Kingery v. Chapple, 504 P.2d 831, 836 (Alaska 1972); Buhl v. Hannigan, 16 Cal.App.4th 1612, 1622, 20 Cal. Rptr.2d 740 (1993); State v. Eitel, 227 So.2d 489, 491 (Fla.1969); State v. Albertson, 93 Idaho 640, 642, 470 P.2d 300 (1970); Everhardt v. City of New Orleans, 253 La. 285, 294-95, 217 So.2d 400 (1968); Massachusetts v. Guest, 12 Mass.App.Ct. 941, 941-42, 425 N.E.2d 779 (1981); see also Wasserstrom, supra, § 7, at 643 (listing eight more states that have reached same conclusion); but see People v. Smallwood, 52 Misc.2d 1027, 1030, 277 N.Y.S.2d 429 (1967) (holding that statute requiring the wearing of a helmet approved by a state official was too vague); but cf. People v. Schmidt, 54 Misc.2d 702, 703, 283 N.Y.S.2d 290 (1967) (reaching opposite conclusion).
We have also been called upon to determine whether a motorcycle helmet law that depends, to some extent, on federal standards is unconstitutionally vague. See Spears, 134 Wash.2d 141, 949 P.2d 347. We concluded the helmet statute was not vague, even though the ordinary citizen might have difficulty finding and comprehending the federal regulations, in large part because the ordinary citizen was not required to master the federal regulations. Instead, the motorcyclist was merely obligated to wear a helmet labeled by its manufacturer as complying with department of transportation regulations. Spears, 134 Wash.2d at 155-56, 949 P.2d 347 (quoting WAC 204-10-040); accord State v. Maxwell, 74 Wash.App. 688, 878 P.2d 1220 (1994)[2] (finding earlier version of motorcycle helmet regulations vague as applied to motorcyclists who were wearing noncompliant helmets because of the significant burden on the motorcyclist to determine whether a helmet complied under difficult federal regulations).
Similarly, we conclude that the statute is not vague facially or as applied to the facts of this case. The ordinary citizen reading this statute is put on notice that there is a general obligation to wear a seat belt. RCW 46.61.688(3). The statute puts the *1187 reader on notice that whether an exception applies to a particular vehicle requires a more searching inquiry. Overwhelmingly, courts considering similar challenges to similar statutes have upheld them against vagueness challenges. See generally Wasserstrom, supra, § 7, at 643 (collecting cases). Eckblad has not shown that RCW 41.61.688 is vague facially or as applied in his case.
We caution that we do not hold that the statute is immune from a future due process challenge. It may be unconstitutionally vague as applied to a different case. Cf. Maxwell, 74 Wash.App. at 691-93, 878 P.2d 1220 (holding that similar statute was vague as applied to three motorcyclists who arguably had attempted to comply with the relevant regulations). We do not reach the merits of a vagueness claim where a driver or passenger reasonably believes that a vehicle or its occupants are exempted by state or federal regulation from the seat belt requirements. Eckblad does not contend he believed the 1982 Chevrolet pickup truck in which he was riding was exempted from the mandatory seat belt law, and therefore such a case is not before us.[3]

CONCLUSION
RCW 46.61.688 is not vague facially or as applied to the facts of this case. Accordingly, we reverse and remand for further proceedings consistent with this opinion.
We concur: JOHNSON, BRIDGE, IRELAND, OWENS and FAIRHURST, JJ.
MADSEN, J., concurs in result only.
SANDERS, J., (dissenting).
The government has determined our citizens are not intelligent enough to decide for themselves whether to wear a seat belt, yet they apparently have enough intelligence to locate and interpret an elusive federal administrative rule. Our case law establishes that the latter task cannot be properly strapped to the laps of our fellow citizens and I must dissent.
We start with the text of the Washington statute, RCW 46.61.688. Subsection (1) of the statute provides a list of definitions not at issue. However subsection (2) provides:
This section only applies to motor vehicles that meet the manual seat belt safety standards as set forth in federal motor vehicle safety standard 208 and to neighborhood electric vehicles. This section does not apply to a vehicle occupant for whom no safety belt is available when all designated seating positions as required by federal motor vehicle safety standard 208 are occupied.
RCW 46.61.688(2) (emphasis added).
In one sense (and only one sense), the meaning of this subsection is clear. The entire section, including subsection (3) discussed below, applies only if the vehicle in which the occupant is riding "meets" certain standards contained in the federal regulation cited.[1] The converse is true: if a vehicle in which one is riding does not "meet" the federal standard, the entire section does not apply.[2] However, from the text one has no idea what the federal standard may be.
*1188 Only if the section applies must one go on to subsection (3), which actually requires one to wear a seat belt. Riding in a vehicle that "meets" the federal standard is therefore a condition precedent to the driver or passenger in the vehicle having any legal duty to wear a seat belt.
Unfortunately the majority does not textually analyze the statute and misstates the legal standards to be applied to vagueness challenges such as Eckblad's. Moreover it fails to analyze prior Washington State case law that is directly on point.
The correct standard for vagueness challenges such as this is:
A statute is unconstitutional if it fails to provide fair notice; if the standards to which a citizen must conform are so inaccessible that an average person could not be expected to discover them by reasonable research efforts, then the statute does not provide the requisite notice.
State v. Maxwell, 74 Wash.App. 688, 691, 878 P.2d 1220 (1994) (citations omitted).
The majority neither cites this standard nor analyzes Maxwell. The reasoning in Maxwell is squarely on point and categorically inconsistent with the views of today's majority. Maxwell, in turn, rested its holding on State v. Dougall, 89 Wash.2d 118, 570 P.2d 135 (1977). There this court held the due process clause of the fourteenth amendment to the United States Constitution and article I, section 3 of the Washington Constitution require that regulatory standards referenced in penal statutes be susceptible to location and understanding by a person of common intelligence. Dougall, 89 Wash.2d at 121-22, 570 P.2d 135.
In Maxwell the Court of Appeals faced a situation identical to the one here. A federal motor vehicle safety standard was incorporated into Washington law by mere reference. While that case dealt with motorcycle helmets rather than seat belts, the text of the administrative rule at issue in that case is illustrative:
Federal Motor Vehicle Safety Standard 218 is hereby adopted by reference as the standard for motorcycle helmets.
Maxwell, 74 Wash.App. at 691, 878 P.2d 1220 (quoting former WAC 204-10-040).
Compare that incorporation-by-reference with the almost identical approach in the statute at issue in the present case:
This section only applies to motor vehicles that meet the manual seat belt safety standards as set forth in federal motor vehicle safety standard 208[.]
RCW 46.61.688(2).
The analysis of the Maxwell court is instructive as well:
In order to comply with the statute and the state regulations, an ordinary citizen would have to know where to find the Federal Motor Vehicle Safety Standards, or Standard 218. Counsel and the court found it because we are aware of the Code of Federal Regulations; the index therein cites us to chapter 49, section 571.218. The regulation itself consists of sections 1 through 7.3.4 and covers 16 pages. Within those sections are topics such as scopepurposeapplicationdefinitions requirementsimpact attenuation penetrationretention systemconfiguration projectionslabelinghelmet positioning indexselection of appropriate headformreference markinghelmet positioning conditioningimpact attenuation testpenetration testand retention system test. Also included are 7 1/2 pages of diagrams and 4 pages of charts.
The regulation fails to inform the average citizen of the location or legal citation of the federal standard it adopts. We have not been advised how a citizen of common intelligence should discover this information. RCW 46.37.530, as implemented *1189 through WAC 204-10-040, fails to provide citizens with the fair notice required for due process.
....
The federal regulation has numerous sections relating to the qualities and tests to be supplied by the manufacturer. Ordinary citizens would not be able to tell which protective helmet met those requirements, even if they could find the regulation. In adopting the entire regulation, the State Patrol has made it impossible for ordinary citizens to understand what is required to comply with the Washington statute.
74 Wash.App. at 691-92, 878 P.2d 1220.
The situation here is identical to Maxwell. We have a vague reference to a "federal motor vehicle safety standard." There is no indication in the text of RCW 46.61.688 whether the "federal motor vehicle safety standard" is contained in a federal statute, a federal administrative rule, or even a "guidance document" put out by a federal agency. The ordinary citizen has no notice that the actual regulation is contained in volume 49 of the Code of Federal Regulations at § 571.208.
But if some extremely diligent, or perhaps lucky, citizen did manage to locate "federal motor vehicle safety standard 208," they would then have to translate over 100 pages of detailed technical gibberish to determine if the car in which they were riding was one in which seat belts must be worn.[3] If the hidden 16-page regulation in Maxwell was beyond the capacity of a "citizen of common intelligence" to discover and decipher, how can the majority determine that the common citizen could find, much less decipher, the maze that is 49 C.F.R. § 571.208?
Instead of looking to Washington case law for guidance, the majority turns to a string of citations from out-of-state cases, with no analysis of whether the cases cited dealt with the vague reference of inscrutable federal statutes.[4] In fact the majority implicitly acknowledges that these cases deal with a situation far removed from that at bar: when a motorcyclist who fails to wear any helmet at all complains that a requirement to wear a certain class of helmet is vague. Division Three of our own Court of Appeals dealt with such a case in City of Kennewick v. Henricks, 84 Wash.App. 323, 927 P.2d 1143 (1996), and correctly held that the defendant could not challenge the vagueness of a helmet standard incorporated by reference when the defendant admitted that he was not wearing any helmet. Although the majority claims that such cases are analogous, the majority can only shoehorn such cases into relevance by an obvious misreading of the statute.
The majority states that "[t]he ordinary citizen reading this statute is put on notice that there is a general obligation to wear a seat belt." Majority at 1186.[5] Not so. The text of the statute says no such thing. There is no obligation to wear a seat belt unless the vehicle in which one is riding meets a certain *1190 condition. This condition precedent is that the vehicle "meet[s] the manual seat belt safety standards as set forth in federal motor vehicle safety standard 208." RCW 46.61.688(2). The subsection of the statute cited by the majority, subsection (3), does not even apply unless the car meets the federal standard.
The majority's claim that "[t]he statute puts the reader on notice that whether an exception applies to a particular vehicle requires a more searching inquiry," majority at 1186-87, turns the plain language of the statute on its head, as the requirement to wear a seat belt in subsection (3) is conditioned on the occupant's car meeting the federal safety standard.
The majority misreads the statute, misidentifies the constitutional test to be applied, and ignores that crucial line of cases which protects Washington's citizens from vague and hidden laws. I dissent.
ALEXANDER, C.J., concurs.
NOTES
[1] The dissent contends that we mischaracterize the statute by not reading it in a strict linear fashion. We disagree that this is necessary. An ordinary, reasonable reader would read the entire statute and would recognize that the legislature intended that subsections (3) and (4) be the heart of the statute. These subsections require every person driving or riding in a motor vehicle be seat-belted or in a child safety seat. The reasonable reader would then realize that the statute created several exceptions, including, functionally, subsection (2)'s limitation to vehicles required by federal law to have seat belts. We note that many states have structured their statutes similarly. E.g., Colo.Rev.Stat. § 42-4-237 ("Unless exempted pursuant to subsection (3) of this section, every driver of and every front seat passenger in a motor vehicle equipped with a safety belt system shall wear a fastened safety belt while the motor vehicle is being operated on a street or highway in this state."); see also Cal. Veh.Code § 27315; Mont.Code Ann. § 61-13-103.

Proper respect to the people's legislature is more important than constructional formality. Cf. State v. Dixon, 78 Wash.2d 796, 804, 479 P.2d 931 (1971) (this court will give a statute a constitutional construction, if possible).
[2] The State challenges the Court of Appeals' jurisdiction to have heard Maxwell. Given our resolution of this case, we decline to reach this issue.
[3] We note in passing the State's argument that "federal standard 208" is easily found through an Internet search and therefore, more available to persons of ordinary intelligence than the motorcycle regulations at issue in Maxwell. However, the Internet teems with information both accurate and inaccurate which can and does mislead users. E.g., Joe McDonald, China Paper Runs U.S. Satire as News, AP Online, June 8, 2002, available at 2002 WL 22577471 (reporting that a Chinese news service had mistakenly reported that the United States Congress, in the tradition of several sports teams, was threatening to move from Washington D.C. unless a new Capitol building was built, relying on the satirical online paper www.theonion.com.). We decline to adjust the vagueness analysis to take the Internet into account. We also decline to reach whether a good faith exception to the exclusionary rule is potentially available, as this issue was not raised below and is rendered moot by our disposition of the substantive issue. See RAP 2.5(a).
[1] Or it applies if the vehicle is a neighborhood electric vehicle, which the parties agree Eckblad's truck was not. Regardless, the application of the law to neighborhood electric vehicles was added after Eckblad's stop in 2003. Laws of 2003, ch. 353, § 4.
[2] The majority criticizes the dissent for reading the statute "in a strict linear fashion." Majority at 1186 n. 1. Of course, that is how people read "traditional texts"such as statutes:

Traditional text is a system of displaying words and images in a two-dimensional format on a sheet of paper or other stationary material surface.... Traditional text is typically presented in a linear form with a single path to progress through the text, starting at the beginning and reading to the end.... The reader must follow an invariant and predetermined route dictated by the medium: start to finish, left to right, top to bottom.
Rogelio Lasso, From the Paper Chase to the Digital Chase: Technology and the Challenge of Teaching 21st Century Law Students, 43 Santa Clara L.Rev. 1, 8 (2002) (footnote omitted).
In contrast to the majority, I believe that "constructional formality"which might more accurately be described as reading the statute the way the legislature wrote itis best.
[3] Like the constitutionally flawed regulation in Maxwell, the federal regulation at issue here contains sections on scope, purpose, applications, definitions, requirements, options, exceptions, cross references, tables, formulas, and charts. The entire regulation is written in technical jargon and cries out for an interpreter who speaks "bureaucratese."
[4] The only precedent that the majority actually examines is City of Bremerton v. Spears, 134 Wash.2d 141, 949 P.2d 347 (1998). Spears was the follow-on case to Maxwell, after the State Patrol had redrafted the administrative rule that was at issue in Maxwell. The new rule required that a motorcycle helmet be labeled with the symbol "DOT." This symbol indicated that the helmet met federal safety standards.

But the requirement in Spears was crystal clearwear a helmet with the specified label. A citizen did not need to search the federal regulation to see what safety standards that label embodied. The citizen need only make sure their helmet had the label. That case is easily distinguished from cases like Maxwell and the case at bar, in which the task facing the citizen in determining what conduct is prohibited is incomparably more difficult and complex.
[5] Page 1186 of the majority opinion makes a similar mischaracterization of the statute at issue: "[C]ompliance with the bedrock requirement of the lawthat drivers and passengers in motor vehicles wear seat belts unless exempteddoes not turn on the scope of the exemptions." Majority at 1186. As demonstrated by the above analysis of the plain text, this is not the way the statute at issue is drafted. Furthermore, the authority the majority cites for that proposition does not relate in any way to the scope of exemptions, but rather is simply a statement of the general purpose of the vagueness doctrine.